# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

BERNICE FORRESTER,

                    Plaintiff,

v.

CORIZON HEALTH, INC.,

                    Defendant.

Civil Action No. 15-6964 (NGG) (LB)

Return date:  To be set by the Court

***Document Filed Electronically***

**(FILED UNDER SEAL)**

===================================================================

## MEMORANDUM OF LAW OF DEFENDANT CORIZON HEALTH, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

===================================================================

Jennine DiSomma
Jakob B. Halpern
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
T: (973) 622-3333
F: (973) 622-3349

*Attorneys for Defendant*
*Corizon Health, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

POINT I

PLAINTIFF IS COLLATERALLY ESTOPPED FROM ASSERTING ANY OF HER
CLAIMS ...............................................................................................3

    STATEMENT OF FACTS ..............................................................3

        A. *Forrester I* .........................................................3

        B. *Forrester II* ........................................................4

    LEGAL ARGUMENT ....................................................................4

        A. Plaintiff's Adverse Employment Action Discrimination Claims under CHRL............9

        B. Plaintiff's Retaliation Claims under CHRL ...........................11

        C. Plaintiff's Hostile Work Environment Claims Under CHRL ....................12

POINT II

CORIZON SHOULD BE GRANTED SUMMARY JUDGMENT ON ALL OF
PLAINTIFF'S CLAIMS.............................................................................13

    STATEMENT OF FACTS ..............................................................13

        A. Healthcare at Rikers Island .......................................13

        B. Plaintiff's Employment with Defendants and her Responsibilities as HSA ...............14

        C. Plaintiff's Diabetes, Leave under the Family and Medical Leave Act,
          and Attendance.......................................................15

        D. Plaintiff's 2010 Termination and Rehiring .............................16

        E. Plaintiff's Opening Performance Problems and Dreadful March 2011
          Performance Review...................................................17

        F. DOH's Directive to Remove Plaintiff from HSA and her May 2011 Demotion .........18

G. HIPAA, the Protection of Patient Health Information, and Corizon's Email Review Project ................................................................................................20

H. Plaintiff's Egregious Security Breach, and Resulting Suspension, Investigation and Termination ........................................................................................21

LEGAL ARGUMENT ........................................................................................23

A. Collateral Estoppel Precluded Plaintiff From Reasserting Previous Factual Allegations and Theories of the Case ........................................................24

B. Corizon is Entitled to Summary Judgment on Plaintiff's Claims as They Relate to Her Termination for Breach of Prison Security ...........................25

   1. Plaintiff Was No Longer Qualified to Perform Her Job ........................25

   2. Corizon Terminated Plaintiff for Legitimate, Nondiscriminatory Reasons ..........26

   3. Plaintiff Cannot Establish That Her Termination Was Pretextual ........................28

      i. *There is no admissible evidence of a "conspiracy" to plaint the BING emails in Plaintiff's sent message folder* ....................................29

      ii. *There is no admissible evidence that Plaintiff was treated differently from other employees* ........................................30

      iii. *Whether Plaintiff's security credentials were indefinitely suspended or revoked is irrelevant* ..........................................31

C. Corizon is Entitled to Summary Judgment on Plaintiff's Claims as They Relate to Her Demotion for Poor Performance ...........................................32

   1. Corizon Demoted Plaintiff for Legitimate, Nondiscriminatory Reasons .............33

   2. Plaintiff Cannot Establish That Her Demotion Was Pretextual ...........................35

      i. *Statistical evidence requested by Plaintiff not only fails to support pretext but confirms that Corizon does not discriminate against their employees* ........................................40

      ii. *Yussuff's emails concerning Plaintiff's poor attendance or criticisms of her work product cannot support a finding of pretext* .........41

      iii. *Corizon's review of Plaintiff's eligibility for FMLA leave cannot support a finding of pretext* ......................................43

iv.   *At all times, Corizon engaged in the interactive process concerning any reasonable accommodations for Plaintiff's asserted disability* .........44

D.  Corizon is Further Entitled to Summary Judgment on Plaintiff's Claims as They Relate to Retaliation ...........................................................................45

1.  Plaintiff's May 2011 Demotion Cannot Support at Retaliation Claim.................45

2.  Plaintiff's EEOC Charge Cannot Support a Retaliation Claim ...........................46

E.  Corizon is Entitled to Summary Judgment on Plaintiff's Claims as They Relate to Hostile Work Environment.................................................................46

CONCLUSION.....................................................................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Almonord v. Kingsbrook Jewish Med. Ctr.,
 2007 WL 2324961 (E.D.N.Y. Aug. 10, 2007) (Garaufis, J.)..................................................23

Am. Ins. Co. v. Messinger,
 43 N.Y.2d 184 (1977) ..........................................................................................................4

Bailey v. Pregis Innovative Packaging, Inc.,
 2009 WL 2970395 (N.D. Ind. Sept. 14, 2009) ......................................................................43

Baldwin v. Cablevision Sys. Corp.,
 65 A.D.3d 961 (1st Dep't 2009), lv. denied, 14 N.Y.3d 701 (2010) ....................11, 39, 45, 46

Benn v. City of New York,
 2011 WL 839495 (E.D.N.Y. Mar. 4, 2011) (Garaufis, J.)................................................40, 42

Bennett v. Health Mgmt. Sys., Inc.,
 92 A.D.3d 29 (1st Dep't 2010) ......................................................................................10, 33

Bielski v. Green,
 674 F. Supp. 2d 414 (N.D.N.Y. 2009)..................................................................................44

Brankov v. Hazzard,
 36 N.Y.S.3d 133 (1st Dep't 2016) ......................................................................................24

Brower v. Cont'l Airlines, Inc.,
 62 F. Supp. 2d 896 (E.D.N.Y. 1999) ....................................................................................34

Browning Ave. Realty Corp. v. Rubin,
 207 A.D.2d 263 (1st Dep't 1994), leave to app. denied, 85 N.Y.2d 804 (1995).....................6

Capellupo v. Nassau Health Care Corp.,
 97 A.D.3d 619 (2d Dep't 2012).............................................................................................6

Cary v. Fischer,
 149 A.D.2d 890 (3d Dep't 1989)............................................................................................5

Chin v. New York City Hous. Auth.,
 965 N.Y.S.2d 42 (1st Dep't 2013)........................................................................................47

Clarke v. One Source Facility Servs., Inc.,
 168 F. Supp. 2d 91 (S.D.N.Y. 2001)....................................................................................35

Clifford v. County of Rockland,
 140 A.D.3d 1108 (2d Dep't 2016) .......................................................................8

Cooper v. Morganthau,
 2001 WL 868003 (S.D.N.Y. July 31, 2001) .......................................................39

Cruz v. Schriro,
 51 Misc. 3d 1203(A), 2016 WL 1173184 (N.Y. Sup. Ct. 2016) ..........................24

Cummings v. Dresher,
 18 N.Y.2d 105 (1966) .........................................................................................1

Davis v. New York,
 316 F.3d 93 (2d Cir. 2002).................................................................................23

DeMarco v. Holy Cross High Sch.,
 4 F.3d 166 (2d Cir. 1993) ...................................................................................32

Donofrio v. New York Times,
 2001 WL 1663314 (S.D.N.Y. Aug. 24, 2001) ....................................................44

Drummond v. IPC Int'l, Inc.,
 400 F. Supp. 2d 521 (E.D.N.Y. 2005) ................................................................34

Economou v. Caldera,
 2000 WL 1844773 (S.D.N.Y. Dec. 18, 2000) .....................................................44

El-Bey v. City of New York,
 151 F. Supp. 2d 285 (S.D.N.Y. 2001).................................................................38

Fagan v. New York State Elec. & Gas Corp.,
 186 F.3d 127 (2d Cir. 1999).................................................................................9

Farrugia v. N. Shore Univ. Hosp.,
 13 Misc. 3d 740 (Sup. Ct. 2006) ........................................................................12

Ferraro v. Kellwood Co.,
 440 F.3d 96 (2d Cir. 2006)...................................................................................8

Fields v. Aramark Facility Servs., Inc.,
 240 F. Supp. 2d 453 (D. Md. 2004) ...............................................................26, 27

Figueroa v. City of New York, Dept. of Sanitation,
 118 Fed. Appx. 524 (2d Cir. 2004) ....................................................................48

Fink v. Winnebago County Sheriff,
 2002 WL 221603 (N.D. Ill. Feb. 12, 2002) ........................................................27

Finn v. New York State Office of Mental Health-Rockland Psychiatric Ctr.,
    2011 WL 4639827 (S.D.N.Y. Oct. 6, 2011) ..........................................................................38

Forrest v. Jewish Guild for the Blind,
    765 N.Y.S.2d 326 (2003) ................................................................................. *passim*

Forrester v. Prison Health Servs., et al.,
    Civil Action No. 12-363 (NGG) (LB) ................................................................................3

Gambello v. Time Warner Commc'ns, Inc.,
    186 F. Supp. 2d 209 (E.D.N.Y. 2002) ...........................................................................39, 41

Gelb v. Royal Globe Ins. Co.,
    798 F.2d 38 (2d Cir. 1986)................................................................................................5

Gineziu Assocs. LLC v. Ifantoponlos,
    70 A.D.3d 427 (1st Dep't 2010) .......................................................................................5

Grady v. Affiliated Cent. Inc.,
    130 F.3d 553 (2d Cir. 1997)...............................................................................................39

Gramatan Home Investors Corp. v. Lopez,
    46 N.Y.2d 482 (1979) ......................................................................................................4

Hernandez v. Kaisman,
    103 A.D.3d 106 (1st Dep't 20U12) ....................................................................................47

Holowecki v. Fed. Express Corp.,
    644 F. Supp. 2d 338 (S.D.N.Y. 2009)................................................................................40

House v. Wackenhut Services, Inc.,
    2012 WL 4017334 (S.D.N.Y. Aug. 20, 2012) ................................................................27, 34

Hudson v. Merrill Lynch & Co., Inc.,
    138 A.D.3d 511 (1st Dep't 2016) ............................................................................7, 24, 33

Ifill v. United Parcel Serv.,
    2008 WL 2796599 (S.D.N.Y. July 17, 2008) .....................................................................34

Jalal v. Columbia Univ.,
    4 F. Supp. 2d 224 (S.D.N.Y. 1998).....................................................................................10

Jeffreys v. City of New York,
    426 F.3d 549 (2d Cir. 2005).............................................................................................23

Johnson v. Port Auth. of New York & New Jersey,
    2009 WL 2227921 (E.D.N.Y. Mar. 22, 2013) .....................................................................28

Joseph v. Owens & Minor Distribution, Inc.,
 5 F. Supp. 3d 295 (E.D.N.Y. 2014), aff'd, 594 Fed. Appx. 29 (2d Cir. 2015) .......................34

Jute v. Hamilton Sundstrand Corp.,
 420 F.3d 166 (2d Cir. 2005).........................................................................................11

Kelderhouse v. St. Cabrini Home,
 259 A.D.2d 938 (3rd Dep't 1999).................................................................................32, 39

Kodengada v. Int'l Bus. Mach. Corp.,
 88 F. Supp. 2d 236 (S.D.N.Y.), aff'd, 242 F.3d 366 (2d Cir. 2000)................................43, 48

Krist v. OppenheimerFunds, Inc.,
 18 Misc. 3d 1111(A), 2007 WL 4624023 (N.Y. Sup. Ct. 2007) ............................................7

Lawless v. TWC Media Solutions, Inc.,
 487 Fed. Appx. 613 (2d Cir. 2012)................................................................................34

Lioi v. New York City Dept. of Health & Mental Hygiene,
 914 F. Supp. 2d 567 (S.D.N.Y. 2012)...........................................................................27

Loria v. Gorman,
 306 F.3d 1271 (2d Cir. 2002)........................................................................................23

Lovland v. Employers Mut. Cas. Co.,
 674 F.3d 806 (8th Cir.), cert. denied, 133 S. Ct. 345 (2012) .................................................42

Makky v. Chertoff,
 541 F.3d 205 (3d Cir. 2008)..........................................................................................25

Mattera v. JPMorgan Chase Corp.,
 740 F. Supp. 2d 561 (S.D.N.Y. 2010)............................................................................45

McCoy v. Pennsylvania Power & Light Co.,
 933 F. Supp. 438 (M.D. Pa. 1996) ...............................................................................26

McDonnell Douglass Corp. v. Green,
 411 U.S. 792 (1973).....................................................................................................9

McGrath v. Toys "R" Us, Inc.,
 3 N.Y.3d 421 (2004) ...................................................................................................24

McPherson v. NYP Holdings, Inc.,
 2005 WL 2129172 (E.D.N.Y. Sept. 1, 2005) (Garaufis, J.) ................................................48

Meiri v. Dacon,
 759 F.2d 989 (2d Cir. 1985)..........................................................................................23

Melman v. Montefiore Med. Ctr.,
    98 A.D.3d 107 (1st Dep't 2012) ................................................. *passim*

Meng v. Schwartz,
    305 F. Supp. 2d 49 (D.D.C. 2004) .........................................................6

Milani v. Int'l Bus. Machines Corp., Inc.,
    322 F. Supp. 2d 434 (S.D.N.Y. 2004)..................................................28

Matter of Miller Brewing Co. v. State Div. of Human Rights,
    66 N.Y.S.2d 937 (1985)........................................................................39

Miloscia v. B.R. Guest Holdings LLC,
    33 Misc. 3d 466 (Sup. Ct. 2011), aff'd in part, modified in part, 94 A.D.3d
    563, 942 N.Y.S.2d 484 (2012) .............................................................23

Minckler v. United Parcel Serv., Inc.,
    132 A.D.3d 1186 (3rd Dep't 2015)......................................................48

Moody v. New York City Dept. of Corrections,
    153 Fed. Appx. 788 (2d Cir. 2005)......................................................44

Moorer v. Grunman Aerospace Corp.,
    964 F. Supp. 665 (E.D.N.Y. 1997) ......................................................37

O'Connor v. Viacom Inc.,
    1996 WL 194299 (S.D.N.Y. Apr. 23, 1996), aff'd, 104 F.3d 356 (2d Cir.
    1996) ....................................................................................................36

Overbeck v. Alpha Animal Health,
    124 A.D.3d 852 (1st Dep't 2015) .........................................................24

Pace v. Ogden Services Corp.,
    692 N.Y.S.2d 220 (3d Dep't 1999).........................................11, 39, 45, 46

Paddock v. SUNY Brockport,
    418 F. Supp. 2d 288 (W.D.N.Y. 2006) ................................................33

Parker v. Blauvelt Volunteer Fire Co.,
    93 N.Y.2d 343 (1999) ...................................................................5, 8, 9

Parklane Hosiery Co. v. Shore,
    439 U.S. 322 (1979)...............................................................................5

Patterson v. County of Oneida,
    375 F.3d 206 (2d Cir. 2004)................................................................10

Payne v. State of New York Power Auth.,
    997 F. Supp. 492 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999)..........................37, 40

Pergament v. Fed. Express Corp.,
    2007 WL 1016993 (E.D.N.Y. Mar. 30, 2007)..................................................................37, 39

Peterec-Tolino v. Comm. Elec. Contractors, Inc.,
    2011 WL 5105474 (S.D.N.Y. Oct. 26, 2011) ...........................................................................8

Petrisch v. JP Morgan Chase,
    789 F. Supp. 2d 437 (S.D.N.Y. 2011)....................................................................................33

Petrosino v. Bell Atl.,
    385 F.3d 210 (2d Cir. 2004)...................................................................................................12

Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,
    94 N.Y.2d 426 (2000) ..............................................................................................................5

Querry v. Messar,
    14 F. Supp. 2d 437 (S.D.N.Y. 1998)......................................................................................44

Raum v. Laidlaw Ltd.,
    173 F.3d 845 (2d Cir. 1999)...................................................................................................47

Redd v. New York State Div. of Parole,
    2010 WL 1177453 (E.D.N.Y. Mar. 24, 2010) (Garaufis, J.)...................................................47

Revere v. Bloomingdale's, Inc.,
    2006 WL 3314633 (E.D.N.Y. Nov. 14, 2006) ........................................................................39

Risco v. McHugh,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012).......................................................................................33

Ritchie v. Landau,
    475 F.2d 151 (2d Cir. 1973).....................................................................................................5

Roge v. NYP Holdings, Inc.,
    257 F.3d 164 (2d Cir. 2001)...................................................................................................43

Ryan v. N.Y. Tel. Co.,
    62 N.Y.2d 494 (1984) ...............................................................................................................4

Saenger v. Montefiore Med. Ctr.,
    706 F. Supp. 2d 494 (S.D.N.Y. 2010).................................................................................38, 42

Sam v. Metro-North Commuter R.R.,
    287 A.D.2d 378 (1st Dep't 2001) .............................................................................................5

Scruggs v. Carrier Corp.,
    688, F.3d 821 (7th Cir. 2012) ........................................................43

Selmanovic v. NYSE Grp., Inc.,
    2007 WL 4563431 (S.D.N.Y. Dec. 21, 2007) ........................................12

Serdans v. New York & Presbyterian Hosp.
    112 A.D.3d 449 (2013) ..............................................................48

Shah v. Wilco Sys., Inc.,
    27 A.D.3d 169 (1st Dep't 2005) ....................................................31

Shumway v. United Parcel Serv., Inc.,
    118 F.3d 60 (2d Cir. 1997)...........................................................31

Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP,
    116 A.D.3d 134 (1st Dep't 2014) ..................................................7, 24

Slavin v. Benson,
    493 F. Supp. 32 (S.D.N.Y. 1980).....................................................5

Soderberg v. Gunther Int'l, Inc.,
    124 Fed. Appx. 30 (2d Cir. 2005)...................................................38

Soloviev v. Goldstein,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ..............................................25

St. Louis v. New York City Health & Hosp. Corp.,
    682 F. Supp. 2d 216 (E.D.N.Y. 2010) ..............................................45

St. Mary's Honor Ctr. v. Hicks,
    509 U.S. 502 (1993)........................................................10, 28, 35

Strong v. Orkand Corp.,
    83 Fed. Appx. 751 (6th Cir. 2003)..................................................26

Turner v. Manhattan Bowery Mgmt. Corp.,
    49 Misc. 3d 1220(A), 2015 WL 8795341 (N.Y. Sup. Ct. 2015) ...........................24

Tyler v. Bethlehem Steel Corp.,
    958 F.2d 1176 (2d Cir. 1992).........................................................10

Vig v. New York Hairspray Co., L.P.,
    67 A.D.3d 140 (1st Dep't 2009) .....................................................24

Weissman v. Dawn Joy Fashions, Inc.,
    214 F.3d 224 (2d Cir. 2000)...........................................................8

Williams v. New York City Health & Hospitals Corp.,
    44 Misc. 3d 1231(A), 2014 WL 4627455 (N.Y. Sup. Ct. 2014) ..........................................6, 7

Williams v. New York City Hous. Auth.,
    61 A.D.3d 62 (1st Dep't 2009) ...............................................................................10, 12, 47

Williams v. Woodhull Med. & Mental Health Ctr.,
    891 F. Supp. 2d 301 (E.D.N.Y. 2012) (Garaufis, J.) ..............................................................48

Yarde v. Good Samaritan Hosp.,
    360 F. Supp. 2d 552 (S.D.N.Y. 2005).....................................................................................46

Zapata v. Town of Huntington,
    193 A.D.2d 674 (2d Dep't 1993) ........................................................................................6, 8

**Statutes**

29 U.S.C. § 2613(c) .................................................................................................................43

29 U.S.C. § 2613(d) .................................................................................................................43

**Other Authorities**

45 C.F.R. § 164.306(a)..........................................................................................................20, 26

45 C.F.R. § 164.312(e)..........................................................................................................20, 26

## PRELIMINARY STATEMENT

"One who has had [her] day in court should not be permitted to litigate the question anew…" Cummings v. Dresher, 18 N.Y.2d 105, 107-08 (1966). Plaintiff Bernice Forrester already had her day in court – in fact, she had three. Plaintiff lost before the Magistrate Judge, then the District Court, and finally before the United States Court of Appeals for the Second Circuit, with each tribunal unequivocally ruling in turn that defendant Corizon Health, Inc. ("Corizon"), her former employer, did not discriminate or retaliate against Plaintiff in any way and was entitled to summary judgment. Plaintiff's Verified Complaint, which recycles the same New York City Human Rights Laws ("CHRL") claims and allegations previously raised in her first action and materially identical to the federal claims on which Corizon prevailed therein, is now her fourth bite at the apple after failing to prove that Corizon discriminated against her during her employment on Rikers Island. But Corizon is entitled to summary judgment on Plaintiff's CHRL claims for two critical and independent reasons:

First, Plaintiff's claims are barred by collateral estoppel. Despite three attempts by Plaintiff to the contrary, Corizon was previously granted summary judgment on Plaintiff's federal claims of disability discrimination and retaliation. Plaintiff's CHRL allegations are identical to those underlying her dismissed federal claims, and there is no material difference between the relevant federal and CHRL standards for her claims. The issues relevant to Plaintiff's CHRL claims were already considered and resolved – in Corizon's favor – by the previous courts. Collateral estoppel fundamentally exists to prevent litigation, such as the present one, from unnecessarily burdening the judicial system with issues that have already been considered and decided. Under controlling law, the Court must apply collateral estoppel here and grant Corizon summary judgment on Plaintiff's CHRL claims.

1

Second, even assuming *arguendo* that Plaintiff is not collaterally estopped from asserting her discrimination and retaliation claims, summary judgment is mandated for many of the same reasons as previously adopted by the Court.  Specifically, Corizon's actions concerning Plaintiff were legitimate business decisions supported by a sizeable foundation of evidence, and Plaintiff did not and cannot offer admissible evidence of any actions by Corizon demonstrating discriminatory animus.  Most importantly, ***indisputably*** and as this Court previously found, both Plaintiff's demotion and her later suspension and termination were ultimately driven *not* by Defendants but by New York City agencies. First, well-documented performance problems resulted in the New York City Department of Health and Mental Hygiene ("DOH") demanding Plaintiff's removal from her supervisory position and led to her demotion.  Second, almost six months later, the New York City Department of Corrections ("DOC") indefinitely suspended Plaintiff's security clearance after sensitive documents – containing inmate locations, gang affiliations, release dates and medical data – were sent from Plaintiff's work to personal email accounts in what amounted to an egregious security breach, which in turn led to her termination. And despite Plaintiff's multiple and ever-changing attempts to muddy the record, three prior tribunals unanimously and consistently found that the context of these decisions provided no suggestion of pretext, thus requiring summary judgment in favor of Corizon.

Accordingly, Corizon respectfully requests that the Court carry forward its previous analysis – and the analyses of the Magistrate Judge and the Second Circuit – and grant summary judgment in favor of Corizon on all of Plaintiff's claims.

**POINT I**

**PLAINTIFF IS COLLATERALLY ESTOPPED
FROM ASSERTING ANY OF HER CLAIMS**

**STATEMENT OF FACTS**

A.      ***Forrester I***

In 2012, Plaintiff Bernice Forrester initiated a lawsuit, Forrester v. Prison Health Servs., et al., Civil Action No. 12-363 (NGG) (LB), against Corizon Health, Inc. ("Corizon") and its predecessor-in-interest, Prison Health Services, Inc., in the United States District Court for the Eastern District of New York ("*Forrester I*"), later amending her complaint.   Statement of Undisputed Material Facts ("SUMF") ¶283.   Plaintiff's Amended Complaint asserted eight causes of action against each of the Defendants, including age and disability discrimination and retaliation under the New York City Human Rights Laws ("CHRL") as well as federal age, disability and FMLA claims of discrimination and retaliation, and FMLA interference.  Id. ¶284. In November 2013, Defendants moved for summary judgment on all counts of Plaintiff's Amended Complaint.  Id. ¶285.

Magistrate Judge Lois Bloom subsequently issued a comprehensive Report and Recommendation ("R&R"), which recommended that Defendants' motion for summary judgment be granted as to all of Plaintiff's federal claims and that the Court decline to exercise supplemental jurisdiction over her CHRL claims.  Id. ¶286.  After Plaintiff objected to the R&R, District Judge Nicholas G. Garaufis issued an equally comprehensive order and opinion adopting in part and modifying in part Magistrate Judge Bloom's Report and Recommendation.  Id. ¶287. Most importantly, and as explained in great detail therein, the Court granted Defendants summary judgment on all of Plaintiffs' federal claims and declined supplemental jurisdiction over Plaintiff's CHRL claims.  Id. ¶288.

3

Plaintiff appealed the District Court's order granting summary judgment to the United States Court of Appeals for the Second Circuit, which in a summary order affirmed the District Court's decision in its entirety for the same reasons set forth by the District Court. Id. ¶¶289-90.

**B.** *Forrester II*

In 2015, while awaiting the determination of her *Forrester I* appeal, Plaintiff filed the instant suit ("*Forrester II*") in the New York State Supreme Court in Manhattan, asserting three claims: disability discrimination based upon both hostile work environment and adverse job actions, as well as retaliation, all under the CHRL. Id. ¶291. Corizon removed *Forrester II* to the Southern District of New York, and the matter was then transferred to this Court. Id. ¶¶298-99.

Other than the removal of one paragraph pertaining to her former age discrimination claims, Plaintiff's common factual allegations in her *Forrester II* Verified Complaint are identical to those in the *Forrester I* Amended Complaint. Id. ¶¶293-97. Moreover, not only has Plaintiff reasserted three CHRL claims previously found in her *Forrester I* Amended Complaint, but her allegations supporting those claims are identical as well. Id.

## LEGAL ARGUMENT

Plaintiff is collaterally estopped from asserting all of her discrimination claims under the CHRL, and therefore Corizon must be granted summary judgment. Collateral estoppel, or issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue an issue [of fact or law] clearly raised in a prior action or proceeding and decided against that party…, whether or not the tribunals or causes of action are the same." Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 500 (1984); see also Am. Ins. Co. v. Messinger, 43 N.Y.2d 184, 190, n.2 (1977); Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 482, 485 (1979) (defining collateral

estoppel to provide that "as to the parties in a litigation, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact… necessarily decided therein in any subsequent action."); Gineziu Assocs. LLC v. Ifantoponlos, 70 A.D.3d 427, 429 (1st Dep't 2010).  "Collateral estoppel…has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party…and of promoting judicial economy by preventing needless litigation."  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  "The estoppel of a former judgment extends to every material matter within the issues which were expressly litigated and determined, and also those matters which, although not expressly determined, are comprehended and involved in the thing expressly decided, regardless of whether they were actually litigated or considered."  Cary v. Fischer, 149 A.D.2d 890, 891 (3d Dep't 1989).

Under New York law, collateral estoppel applies if (1) the "issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action"; and (2) "the plaintiff had a full and fair opportunity to litigate the issue in the earlier action."[1] Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999); Sam v. Metro-North Commuter R.R., 287 A.D.2d 378, 379 (1st Dep't 2001) (same); see also Gelb, 798 F.2d at 44 ("Judicial efficiency demands that there be an end to litigation at some point").

Courts have consistently precluded state law claims where the federal analog was already decided against a plaintiff by a federal court.  See, e.g., Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 94 N.Y.2d 426, 431-33 (2000) (affirming dismissal of state law derivative action

---

[1] In diversity cases, like this case, federal courts apply state law to determine the applicability of collateral estoppel. Ritchie v. Landau, 475 F.2d 151, 154 (2d Cir. 1973); Slavin v. Benson, 493 F. Supp. 32, 34 (S.D.N.Y. 1980). However, there is no material difference between collateral estoppel under federal and New York state law.  Under federal law, for collateral estoppel to apply (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986).

asserting corporate waste and breach of fiduciary duty where same issues were determined in federal court's decision to dismiss Federal RICO claim); Browning Ave. Realty Corp. v. Rubin, 207 A.D.2d 263, 266-67 (1st Dep't 1994) (barring state for common law fraud and breach of fiduciary duty claims where federal court had already dismissed federal RICO claim), leave to app. denied, 85 N.Y.2d 804 (1995); Capellupo v. Nassau Health Care Corp., 97 A.D.3d 619, 621-24 (2d Dep't 2012) (dismissing state false imprisonment and intentional infliction of emotional distress claims on basis that patient was wrongly hospitalized because federal court had already decided that Fourth and Fourteenth Amendment rights were not violated and that defendant had followed New York Mental Hygiene Law procedures); see also Meng v. Schwartz, 305 F. Supp. 2d 49, 57-61 (D.D.C. 2004) (applying collateral estoppel after (1) court dismissed federal claims and declined supplemental jurisdiction on remaining claims and (2) same claims were then refiled on diversity grounds).   In fact, collateral estoppel bars a subsequent cause of action which, though different than the previous claim, contains a critical, similar element.  See Zapata v. Town of Huntington, 193 A.D.2d 674, 675 (2d Dep't 1993) (despite differences in plaintiff-decedent's causes of action relating to his drowning while evading town security guards – a federal Section 1983 civil rights claim and state court wrongful death and assault claims – collateral estoppel applied because plaintiff had full and fair opportunity to litigate whether guards assaulted decedent in federal court).

Given this law, it is no surprise that New York courts have consistently found collateral estoppel precludes relitigation of CHRL claims after adverse federal decisions on analogue federal claims.  For instance, in Williams v. New York City Health & Hospitals Corp., 44 Misc. 3d 1231(A), 2014 WL 4627455 (N.Y. Sup. Ct. 2014), the district court had granted plaintiff summary judgment on her Family Medical and Leave Act ("FMLA") employment

discrimination claims, reasoning that plaintiff's "excessive absenteeism and lateness…provide[d] an entirely one-sided record…of legitimate, non-discriminatory reasons for [her] termination." Id. at *6 (quoting Williams v. New York City Health & Hosps. Corp., 2012 WL 5506128, at *6 (S.D.N.Y. 2012)).   In reviewing plaintiff's subsequent CHRL discrimination claims, the state court first noted that "the relevant inquiry for purposes of collateral estoppel is identity of issues and not identity of causes of action, [and] that the current and prior actions involve[d] different causes of action or involve[d] different tribunals, is not in any way relevant, nor dispositive." Williams, 2014 WL 4627455, at *4.   While recognizing the liberality of CHRL, the court determined that whether the plaintiff was discharged for legitimate non-discriminatory reasons was "a strictly factual question not involving application of law to facts or the expression of an ultimate legal conclusion, [and] does not implicate any of the several ways in which [CHRL] claims…raise issues not identical to their federal and state counterparts." Id. at *8 (quoting Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP, 116 A.D.3d 134, 140 (1st Dep't 2014)).   "Notably and significantly," the court reasoned

> this isn't a case where the SDNY's decision turned on conduct which might not be discriminatory under federal FMLA jurisprudence, but might very well by under the broad breadth and scope of the NYCHRL.   Instead, *on the very same facts at issue here*, the SDNY determined that plaintiff's conduct was such that defendants were forced to fire him, which is a dispositive issue in this action.   Accordingly, the SDNY's determination on this issue is conclusive…

Williams, 2014 WL 4627455, at *8 (emphasis added); see also Simmons-Grant, 116 A.D.3d at 140 (plaintiff's re-filed state court CHRL claim collaterally estopped because federal court had granted summary judgment to defendant on plaintiff's previous Title VII employment retaliation claims); Hudson v. Merrill Lynch & Co., Inc., 138 A.D.3d 511, 517 (1st Dep't 2016) (plaintiff's re-filed state court CHRL claim collaterally estopped because federal court had granted summary judgment to defendant on plaintiff's previous Title VII gender discrimination claims); Krist v.

OppenheimerFunds, Inc., 18 Misc. 3d 1111(A), 2007 WL 4624023, *7 (N.Y. Sup. Ct. 2007) (plaintiff's re-filed state court CHRL *disability discrimination* claim collaterally estopped because federal court had granted summary judgment to defendant on plaintiff's previous *ADEA* claim); Clifford v. County of Rockland, 140 A.D.3d 1108, 1110 (2d Dep't 2016) (plaintiff's re-filed state court State Human Rights Law ("SHRL") claim collaterally estopped because federal court had dismissed Title VII disability discrimination claims).

While the doctrine of collateral estoppel is flexible enough so that causes of action and elements need not be identical for it to apply, see Zapata, 193 A.D.2d at 675, the present issue before the court does not require a more substantial analysis because plaintiff's previously dismissed federal and currently-pending CHRL claims contain the same elements.  See Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d Cir. 2006) ("The standards for liability under [CHRL] are the same as those under the equivalent federal anti-discrimination laws."); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (stating that the standards under ADA and CHRL are substantially similar and using the same analysis to adjudicate retaliation claims brought under both statutes); Peterec-Tolino v. Comm. Elec. Contractors, Inc., 2011 WL 5105474, at *1 n.1, *4 n.2 (S.D.N.Y. Oct. 26, 2011) (applying the same analysis to adjudicate ADA and CHRL claims); Forrest v. Jewish Guild for the Blind, 765 N.Y.S.2d 326, 332-33 (2003) ("[T]he standard for recovery under section 296 of the Executive Law is in accord with the federal standards under [Title VII] and the human rights provisions of [NYCHRL] mirror the provisions of the Executive Law.").

Here, collateral estoppel of Plaintiff's CHRL claims is mandated.  First, Plaintiff "had a full and fair opportunity to litigate the issue in the earlier action."  Parker, 93 N.Y.2d at 349.  In fact, unlike in many collateral estoppel cases, Defendants had moved for, and Plaintiff opposed,

summary judgment on the identical CHRL claims she has re-filed here.  SUMF ¶285.

Second, each "issue in [this] action is identical to an issue which was raised, necessarily decided and material in the first action."  Parker, 93 N.Y.2d at 349.  Specifically, the equivalent standards of proof necessary to establish summary judgment on both Plaintiff's previous federal claims and her CHRL claims is materially identical and mandate the use of collateral estoppel:

### A.    Plaintiff's Adverse Employment Action Discrimination Claims under CHRL

Plaintiff's Complaint includes a cause of action for disability discrimination based on adverse employment action under CHRL.  This claim was found in Plaintiff's *Forrester I* complaint and is founded on identical factual allegations in this matter.  SUMF ¶¶292-94, 296.

Moreover, the elements for both claims are materially identical.  Under federal law:

> [T]he plaintiff must first establish a *prima facie* case by showing [1] membership in a protected class, [2] qualification for the position, [3] an adverse employment action, and [4] circumstances that give at least minimal support to an inference of discrimination.

Fagan v. New York State Elec. & Gas Corp., 186 F.3d 127, 132 (2d Cir. 1999).  Under CHRL, the plaintiff must establish:

> (1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination.

Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 113-14 (1st Dep't 2012) (quoting Forrest, 3 N.Y.3d at 305).

In a summary judgment motion under both frameworks, after an employee establishes a *prima facie* case, the Court utilizes the burden shifting framework established in McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973), wherein the employer must first rebut the presumption of discrimination by setting forth legitimate, independent and non-discriminatory reasons to support its employment decision and then the employee must overcome this by

proving the legitimate reasons were "merely a pretext for discrimination by demonstrating both that the stated reasons were false and that discrimination was the real reason."  Melman, 98 A.D.3d at 113-14 (quoting Forrest, 3 N.Y.3d at 305); Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Alternatively, under a mixed-motive approach, "the question on summary judgment is whether there exist[s] triable issues of fact that discrimination was one of the motivating factors for the defendant's conduct."  Williams v. New York City Hous. Auth., 61 A.D.3d 62, 78 n.27 (1st Dep't 2009); Melman, 98 A.D.3d at 127; Bennett v. Health Mgmt. Sys., Inc., 92 A.D.3d 29, 41 (1st Dep't 2010); see Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1181 (2d Cir. 1992) (same approach under federal law).   However, "under either the mixed-motive approach or the McDonnell Douglas framework, the court's ultimate task is to determine whether Plaintiff presented 'sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination.'"  See DiSomma Decl., Exh. F ("Garaufis Op."), at 28 (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999)); Jalal v. Columbia Univ., 4 F. Supp. 2d 224, 233-34 (S.D.N.Y. 1998).

Whether Plaintiff could offer admissible evidence sufficient to establish pretext sufficient to overcome summary judgment on her adverse action claims was at issue in *Forrester I*.  The Court, after reviewing the evidence proffered by Plaintiff, Garaufis Op., at 33-52, determined that Plaintiff could not, stating:

> In sum, the court finds that Plaintiff has failed to offer sufficient evidence to permit the inference 'that an illegal discriminatory reason played a motivating role' in the demotion.
>
> …
>
> In sum, the court finds that Plaintiff has failed to offer sufficient evidence to permit the inference 'that an illegal discriminatory reason played a motivating role' in the suspension and termination.

Id. at 33, 42.  Therefore, the Court granted Defendants summary judgment, which was summarily affirmed by the Second Circuit.  SUMF ¶290.  As such, Plaintiff is collaterally estopped from relitigating this claim.

### B.      Plaintiff's Retaliation Claims under CHRL

Plaintiff's Complaint also includes a cause of action for retaliation under CHRL.  This claim was found in Plaintiff's *Forrester I* complaint and is founded on identical factual allegations in this matter.  SUMF ¶¶292-94, 297.

Retaliation claims under both federal law and CHRL are analyzed identically.  To establish a *prima facie* case for retaliation claims under federal law, an employee must prove: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)).  Similarly, to establish a *prima facie* case for retaliation claims under the CHRL, an employee must prove that: (1) she was engaged in activity protected by the statute; (2) the employer was aware that she participated in that activity; (3) she suffered from a disadvantageous employment action based upon her protected activity; and (4) a causal connection between the protected activity and the adverse employment action.  See Baldwin v. Cablevision Sys. Corp., 888 N.Y.S.2d 1, 6 (1st Dep't 2009); Pace v. Ogden Services Corp., 692 N.Y.S.2d 220, 224 (3d Dep't 1999).

Whether Plaintiff could offer admissible evidence sufficient to establish pretext sufficient to overcome summary judgment on her retaliation claims was at issue in *Forrester I*.  The Court, after reviewing the evidence proffered by Plaintiff, Garaufis Op., at 33-52, rejected Plaintiff's

remaining arguments:

> Plaintiff ignores clear authority from the Second Circuit that a retaliation claim
> fails at the summary judgment stage where plaintiff produces no evidence beyond
> "temporal proximity."

Id. at 52.  Therefore, the Court granted Defendants summary judgment, which was summarily affirmed by the Second Circuit.  SUMF ¶290.  As such, Plaintiff is collaterally estopped from relitigating this claim.

### C.  Plaintiff's Hostile Work Environment Claims Under CHRL

Finally, Plaintiff's Complaint includes a cause of action for a discriminatory hostile work environment under CHRL.  This claim, too, were found in Plaintiff's *Forrester I* complaint and is founded on identical factual allegations in this matter.  Id. ¶¶292-95.

To establish a hostile work environment under federal law, an employee must prove: (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment; and (2) that the specific basis exists for imputing the conduct that created the hostile work environment to the employer.  Petrosino v. Bell Atl., 385 F.3d 210, 211 (2d Cir. 2004).  Under the CHRL, the employee must prove that she was treated less well than other employees on the basis of her protected class.  See Williams, 61 A.D.3d at 78; see also Farrugia v. N. Shore Univ. Hosp., 13 Misc. 3d 740, 748-49 (Sup. Ct. 2006), adhered to on reargument (N.Y. Sup. Ct. Feb. 28, 2001) ("under the City's law, liability should be determined by the existence of unequal treatment, and questions of severity and frequency reserved for consideration of damages."); Selmanovic v. NYSE Grp., Inc., 2007 WL 4563431, at *4 (S.D.N.Y. Dec. 21, 2007).  Although severity and pervasiveness is not an element of a CHRL claim, *discriminatory* treatment of the plaintiff is *required under both causes of action*.

Whether Plaintiff could offer admissible evidence sufficient to establish discriminatory

treatment as part of her hostile work environment claim was at issue in *Forrester I*.  The Court, after reviewing the evidence proffered by Plaintiff, <u>Garaufis Op.</u>, at 13-22, rejected Plaintiff's argument:

> [A]s Judge Bloom concluded, Plaintiff fails to establish how Defendants' actions—the vast majority of which are facially neutral—***relate in any way to her medical condition***.

<u>Id</u>. at 16 (emphasis added).  Based on this conclusion (as well as its independent conclusion regarding severity and pervasiveness), the Court granted Defendants summary judgment, which was summarily affirmed by the Second Circuit.  <u>SUMF</u> ¶290.  As such, Plaintiff is also collaterally estopped from relitigating this claim.

As Plaintiff is collaterally estopped from relitigating *any* of her claims against Corizon, we respectfully submit that summary judgment must be entered against Plaintiff on the entirety of her Complaint.

**POINT II**

**CORIZON SHOULD BE GRANTED SUMMARY
JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS**

**STATEMENT OF FACTS**

**A.**     **<u>Healthcare at Rikers Island</u>**

DOC operates the Rikers Island Correctional Facility jail, and DOH oversees healthcare for its inmates.[2]  <u>SUMF</u> ¶¶1-2.  To do so, DOH contracts with private entities rather than providing the healthcare itself.  <u>Id</u>. ¶4.  Corizon is (and its predecessor, Prison Health Services ("PHS"), was) a correctional healthcare management company, and had held the Rikers Island contract from 2001-15, having won competitive bidding in 2000 and approximately every three years since.  <u>Id</u>. ¶¶7-10.  Corizon's services were subject to DOH oversight, and DOH had the

---

[2] Although Defendant has summarized the most salient facts herein, it incorporates by reference all those facts set forth in its accompanying Statement of Undisputed Material Facts.

13

power to promulgate rules pertaining to services provided and issue directives concerning employee conduct on its premises, while DOC oversaw security-related issues. Id. ¶¶12-14, 23. For instance, both DOC and Corizon required that each employee obtain and maintain DOC security clearance to enter the facility and as a condition of employment. Id. ¶¶25-26.

Additionally, the contract contained *specific* staffing requirements and performance indicators that Corizon *must* satisfy to be in compliance with its contractual obligations; if not, Defendants are subject to liquidated damages. Id. ¶¶14-15. DOH exercised significant oversight to ensure such compliance and satisfactory operations on site, including having staff monitors located on site and conducting periodic investigations. Id. ¶¶17-22. Corizon's management participated in monthly meetings with DOH to discuss operational and performance issues per an agenda originated by DOH, and was in constant, more informal contact with DOH concerning day-to-day operations and performance. Id. ¶19, 21. DOH retained discretion if it is dissatisfied with Corizon's performance, with potential outcomes including loss of the contract. Id. ¶13-15.

### B.    Plaintiff's Employment with Defendants and her Responsibilities as HSA

Plaintiff was hired by Corizon in 2001, and by 2004, was promoted to the position of HSA. Id. ¶¶30, 33. As HSA, she was responsible for administrative and operational control of a specific healthcare unit at Rikers. Id. ¶¶45-46. In March 2009, Plaintiff was laterally transferred to be HSA of the North Infirmary Command ("NIC"). Id. ¶37. The NIC consists of two buildings, one of which is an infirmary, meaning it is one step down from hospitalization and responsible for the care of the most seriously-ill patients at the prison. Id. ¶¶38-39.

Corizon's supervisory team for each unit, including NIC, consisted of an HSA, Site Medical Director ("SMD"), Director of Nursing ("DON") and Mental Health Unit Chief. Id. ¶¶42-44. The HSA was responsible for the operation of the entire unit, and specific

responsibilities included management and administration of the health services program, supervision of personnel concerning administrative issues, providing administrative assistance for the clinical team, supervision of the facility and the resources therein, and acting as a liaison between the various departments of the unit, with executive staff, and with DOH and DOC.  Id. ¶¶45-46.  Additionally, the HSA prepares and submits DOH-required reports, and participate in regular periodic internal and DOH meetings concerning unit administration.  Id. ¶¶47-48.

C.       **Plaintiff's Diabetes, Leave under the Family
         and Medical Leave Act, and Attendance**

Plaintiff was diagnosed with diabetes in 2001, which many of her coworkers knew.  Id. ¶52.  In 2008, Plaintiff for the first time requested intermittent FMLA leave time with respect to her diabetes.  Id. ¶57.  To request leave, employees would apply to HR, and HR would review their applications solely to determine they met the standards to qualify for such leave.  Id. ¶¶53-55.  PHS *approved* Plaintiff's 2008 request, and also *approved* her successive 2010 and 2011 intermittent FMLA leave applications.  Id. ¶¶57, 59, 66.

After Plaintiff was approved for leave in 2010, a question was raised of whether employees, including Plaintiff, could renew intermittent leave for the same medical condition for an additional 12-month period.  Id. ¶60.  PHS investigated this legal question – ultimately determining it was proper and so informing Plaintiff – with Plaintiff retaining her ability to use intermittent FMLA leave at all times during the investigation.  Id. ¶¶62-65.  Similarly, after Plaintiff's first leave term expired in 2009, PHS continued to allow her to use FMLA leave time even without formal leave, and Plaintiff *admits* that she never tried to use FMLA leave and was denied.  Id. ¶¶58, 65.

Although Plaintiff had FMLA leave and used it when appropriate, it was not the cause of the vast majority of her late arrivals at work.  Corizon's attendance procedure required tardy

employees to call into the Operations Department and report the reason – whether FMLA or some other cause – and when they would arrive.  Id. ¶¶67-68.  It was Plaintiff's responsibility to report FMLA leave time, and when she did so, Corizon always honored it and recorded it in that day's sick log.  Id. ¶¶68-69, 71-73.  However, from 2008 through her 2011 termination, Plaintiff was tardy an incredible 764 times, with less than 5% reported as intermittent FMLA leave.  Id. ¶¶76-77.  Moreover, Plaintiff would at times report in as late and then fail to show up at her arrival time, or at all.  Id. ¶78.

> **D.**      **Plaintiff's 2010 Termination and Rehiring**

Although DOH always exercised oversight over Corizon's operations, beginning in 2010, it began to more specifically scrutinize NIC's performance and communicated significant deficiencies in the NIC unit to Corizon, including:

- Lack of care and/or substandard quality of care to some inmates;

- Failure to follow procedures on patient intake;

- Serious problems with the distribution of and accounting for medical supplies;

- Problems with the maintenance of medical equipment;

- Problems with oversight and enforcement of medical protocols;

- Failure to administer patient complaint boxes and address patient complaints;

- A disorganized facility;

- Insufficient rounding of the facility by PHS staff; and

- Leadership concerns.

Id. ¶¶80-81.  As HSA, these deficiencies were the responsibility of Plaintiff, and although Corizon communicated with Plaintiff and her staff to improve the operation of the building, the problems did not improve.  Id. ¶¶84-85.

In an effort to improve performance and address DOH's concerns about the ongoing

problems in the facility, Corizon planned a reorganization of the NIC unit.  Id. ¶86.  This included the elimination of the purely administrative HSA position and transfer of its duties to a clinical position, "Director of Infirmary Services," which required a clinical background and experience because a portion of NIC is an infirmary setting.  Id. ¶¶87-91.  Because Plaintiff was not qualified for the new position, Corizon initially decided to terminate her employment.  Id. ¶¶ 90, 92-93.  However, Corizon had not yet identified a full-time qualified candidate to fill the HSA role, so Don Doherty, the Division Vice President, decided to retain Plaintiff to continue as temporary NIC HSA until a Director of Infirmary Services was named.  Id. ¶¶96-98.  At that time, Doherty expressed to Plaintiff the importance of ensuring that NIC's operation fully complied with DOH's directives moving forward.  Id. ¶101.

### E.   Plaintiff's Ongoing Performance Problems and Dreadful March 2011 Performance Review

Plaintiff continued as temporary HSA for about six months, but her performance did not improve.  NIC continued to experience significant problems and PHS continued to receive complaints from DOH about NIC operations.  Id. ¶¶104-06.  In March 2011, all HSAs, including Plaintiff, were administered a performance review covering 2010, during which PHS utilized a "360 degree" review procedure where the supervisor was independently scored and reviewed by six members of the executive staff.  Id. ¶¶113-15.  For each of eighteen (18) separate specific skills (such as "Quality of Work," "Cooperation/Relationships," and "Planning and Organization"), every reviewer would independently provide a score – ranging from 1 (for "Needs Improvement") to 4 (for "Far Exceeds Expectations") – and those scores were averaged for Plaintiff's review.[3]  Id. ¶¶117-20.

**Plaintiff received a composite score of _1.12_ on her 2011 review for her performance**

---

[3] If a reviewer did not have a basis to score a specific skill, he or she would refrain from doing so.  SUMF ¶120.

**in 2010** – well below those scores earned by the other HSAs.  Id. ¶128, 130.  Moreover, the scores of each reviewer – including the 5 of 6 not alleged to have discriminated – were incredibly consistent with each other.  Id. ¶129.  These scores fell well below Plaintiff's 2.94 and 2.67 scores on her two most recent reviews (administered individually by Yussuff, at times when Plaintiff also had diabetes and was taking intermittent FMLA leave), and well below a 2.00 satisfactory rating.  Id. ¶108-11.

### F.  **DOH's Directive to Remove Plaintiff from HSA and her May 2011 Demotion**

During the spring 2011, DOH notified Corizon that conditions at NIC had deteriorated further, and ████████████████████████████████████████████████████

████████████  Id. ¶¶131, 141-42.  Despite her knowledge that NIC was under DOH's "spot light," id. ¶103, Plaintiff's problems, identified above, that led to NIC's 2010 reorganization had continued and in some cases became worse.  Id. ¶¶104-06.  Plaintiff still was not fulfilling her administrative duties – for instance, she failed to attend some administrative meetings (and when she did attend she was unprepared) and she failed to consistently round – that is, physically conduct regular tours of the entire facility – thereby not exercising oversight over NIC.  Id. ¶¶105, 143-45.  In one notable instance, Plaintiff was unable to effectively prepare an important internal risk management response report, even after being provided additional resources and assistance to do so.  Id. ¶106.

Issues came to a head in late April 2011, when conditions in NIC were observed to be "deplorable," id. ¶140, and Corizon management – notably Plaintiff – failed to respond to DOH's request for services:

- On April 21, DOH and Corizon discovered the inappropriate placement of a patient with three broken limbs; Plaintiff did not know about the patient's admission or placement.  Id. ¶135.

- On April 26, Corizon received a 1:24 call from DOH, reporting: "I am on the line with Colette [a DOH monitor]; the [NIC-]Main has not been set up or stocked for adequate patient care.  NONE of the clinic/patient care machines i.e. Glucometer, defibrillator, etc. have been checked since December 2010 and there aren't any supplies.  She spoke with Bernice [Forrester] at about 10a and she said that she was sending someone up there and that person has not made it there yet."  When DOH called Yussuff to complain, he promised corrective actions to prevent future occurrences.  Id. ¶136.

- On April 27, DOH reported major problems with clinical documentation and use of the new electronic medical record system.  Id. ¶137.

- That same day, the NIC-Main sixth floor clinic was observed with "horrific conditions" and "not suitable for patient care.  It was unclear, cluttered with debris such as crutches and canes laying on floor, an open crash cart, outdated supplies, unsanitary conditions, and oxygen tanks near empty."  Id. ¶138.

- On April 28, Corizon received multiple complaints from DOH about inmate care, id. ¶140:

  o Inmate 1 had a "filthy" cast and bandages on his that had not been changed in a week, with badly-damaged skin and a "putrid" odor coming from the cast.

  o Inmate 2 required depends for incontinence but had not been provided them for three days despite alerting the nursing staff daily.

  o Inmate 3 needed a hip replacement, was in a lot of pain, and some pins in his hip were visible.  Plaintiff had already been alerted, but the procedure had not been scheduled.

  o General Complaint that NIC lacks appropriate staff and supplies, and conditions of the 6th floor clinic in NIC-Main were described as "deplorable".

Given these and other ongoing problems, DOH decided that it needed to make ███████

████████████████████  Id. ¶131.  Among these, Dr. Homer Venters, DOH's Assistant

Commissioner of Correctional Health Services and its direct liaison with Corizon, informed

Corizon that ████████████████████████████████████████████████

████████████████████  Id. ¶141.  He continued:

████████████████████████████████████████████████

19

[black redaction box]

Id. ¶142.  Faced with DOH's threat and its specific direction that NIC's leadership positions
needed to be changed, Corizon reacted swiftly and reasonably, removing Plaintiff as well as the
SMD and DON from their positions and replacing them.  Id. ¶¶148-49.  It is undisputed that
Jessica Lee, a registered nurse and Plaintiff's permanent replacement as HSA, was an excellent
administrator and NIC's operations significantly improved under her leadership.  Id. ¶¶150-51.

[black redaction box] Id. ¶152.

Based on her continued poor performance despite the numerous warnings she had
received, Corizon determined Plaintiff could not retain her position as an HSA and be moved to
another building.  Id. ¶153.  Instead, she was given the option of termination with a severance
package, or reassignment within the organization as an Administrative Assistant ("AA"),
effectively an assistant to an HSA.  Id. ¶154.  Plaintiff elected reassignment to AA (in another
building), and began in that position immediately, id. ¶155, functioning as an AA for the next
four and a half months.  (As an AA, Plaintiff's direct supervisor was Ruel Huffstead, not
Yussuff.  Id. ¶160.)

G.    **HIPAA, the Protection of Patient Health
      Information, and Corizon's Email Review Project**

As a health care provider, Corizon is subject to the requirements of the Health Insurance
Portability and Accountability Act ("HIPAA"), including those pertaining to the privacy of
information in electronic records,[4] as well as numerous New York City and company
requirements regarding more general prison security, the protection of health records, and the use
of electronic communications.  Id. ¶¶178-89.  Moreover, Corizon had been involved in a high

---

[4] See 45 C.F.R. §§ 164.306(a), 164.312(e).

profile breach regarding a celebrity patient's health information, and had noted several technical violations of medical privacy laws and security policies, in that some employees were inadvertently transmitting personally identifiable health information ("PHI") by email, both of which increased company sensitivity to the protection of PHI.  Id. ¶¶191-95.

In an effort to increase compliance with governmental and company requirements, Corizon utilized several methods, such as educating its employees on HIPAA's requirements and procedures to fulfill them.  Id. ¶¶196-98.  In September 2011, Corizon's HR and information technology departments began jointly reviewing the email inboxes of *all* of Corizon's on-site employees to make sure employees were not including PHI in subject lines of emails, and provide corrective action if necessary, in order to comply with company policy and the law.  Id. ¶199.  The email review was subject to specific protocols and conducted alphabetically, and while HR could see the employee email accounts, they could not send emails on the employee's behalf.  Id. ¶¶200, 202-05.

### H.  Plaintiff's Egregious Security Breach, and Resulting Suspension, Investigation and Termination

When Eileen McNerney of HR began to review Plaintiff's work email account on September 20, 2011, she discovered a series of nine separate emails sent to Plaintiff's personal email address between 2:43-2:44 p.m. that day with the subject line "BING."  Id. ¶¶206-07.  Recognizing that "BING" reports contain both security information, such as locations, gang affiliations and release dates, and PHI concerning the administratively segregated – in other words, the ***most violent*** – inmates, McNerney opened the emails and learned that BING reports – comprising hundreds of pages listing dozens of inmates on each – were improperly enclosed.  Id. ¶¶208-10, 214, 219.  She also found an adjacent email, sent at 2:42 p.m., which contained an additional 13 BING reports as enclosures.  Id. ¶220.  McNerney, and then Doherty when she

notified him, were both gravely concerned, believing that the release of this information could **compromise prison security** – for instance, rival gang members could discover prisoner's identities, locations and release dates.  Id. ¶¶211, 222-24.  (DOC later corroborated this concern. Id. ¶233.)

Plaintiff's _unsecured_ transmission of "BING" reports outside of Rikers and to her external, _personal_ email address was a blatant violation of HIPAA and company protocols, and comprised an egregious security breach.  Id. ¶¶183-86, 188-89, 213, 256, 261.  Because of this patent security breach, Doherty told McNerney to suspend the employee immediately, and McNerney did so, going to Plaintiff's office, escorting her from the premises around 4 p.m. and informing her she was suspended pending an investigation.  Id. ¶¶225-29.  That day, per protocol, the matter was reported to DOH, and then to DOC.  Id. ¶¶230-34.

Corizon proceeded to investigate the breach and, among other things, afforded Plaintiff an opportunity to explain her actions in an interview.  Id. ¶241.  The interview was not *pro forma* – given their concern about prison security, Doherty and McNerney reviewed with Plaintiff each BING email that had been sent to Plaintiff's personal email, asking her to read *every one* of the many thousands of names on the BING sheets and state if she knew any of the inmates listed on those emails.  Id. ¶243.  Moreover, they questioned Plaintiff why she sent the emails, and she did not initially deny sending them, although stated she could not remember doing so.  Id. ¶¶242, 246.  Corizon also reviewed Plaintiff's email, which uncovered further improper emails to her personal address, and spoke to her supervisor, who could provide no reason for her to email the BING reports externally.  Id. ¶¶250-51, 253-54.

Corizon reported the results of its investigation to DOC, and **DOC** indefinitely suspended her security clearance.  Id. ¶¶ 259, 261, 264.  Because Plaintiff had no valid security clearance –

an express condition of her employment – and could not work on Rikers Island, Corizon terminated her employment.  Id. ¶¶269-71.  (Of note, Yussuff, the alleged primary discriminator, had nothing to do with the email investigation or Plaintiff's termination.  Id. ¶¶199-271.)

## LEGAL ARGUMENT

Even assuming Plaintiff's CHRL claims are not collaterally estopped by the prior judgment, Corizon is still entitled to summary judgment on those claims.  Summary judgment should be granted if the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  If the moving party satisfies its initial burden of demonstrating the absence of a genuine issue of fact, the nonmoving party must go beyond the pleadings and, through affidavits or other discovery, "set forth specific facts showing that there is a genuine issue for trial."  Id. 56(e).  Neither factual disputes that are irrelevant or immaterial to the disposition of the case nor unsupported conclusory statements and allegations can preclude a grant of summary judgment.  See Loria v. Gorman, 306 F.3d 1271, 1282-83 (2d Cir. 2002); Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002); see also Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all" discrimination cases); Almonord v. Kingsbrook Jewish Med. Ctr., 2007 WL 2324961, at *1 (E.D.N.Y. Aug. 10, 2007) (Garaufis, J.) (citation omitted) (same).

Courts look to federal precedent, including that under the ADA, to interpret CHRL claims.  Miloscia v. B.R. Guest Holdings LLC, 33 Misc. 3d 466, 474 n.2 (Sup. Ct. 2011), aff'd in part, modified in part, 94 A.D.3d 563, 942 N.Y.S.2d 484 (2012); Vig v. New York Hairspray

Co., L.P., 67 A.D.3d 140, 145 (1st Dep't 2009) (same); McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 434 (2004) (using federal law to interpret fee shifting provision in CHRL); Cruz v. Schriro, 51 Misc. 3d 1203(A), 2016 WL 1173184, at *6 (N.Y. Sup. Ct. 2016) (interpreting federal law to determine whether a skin rash is a cognizable disability under CHRL); Turner v. Manhattan Bowery Mgmt. Corp., 49 Misc. 3d 1220(A), 2015 WL 8795341, at *3 (N.Y. Sup. Ct. 2015) (referencing federal pretext analysis); Overbeck v. Alpha Animal Health, 124 A.D.3d 852, 854 (1st Dep't 2015) (referencing U.S. Supreme Court sexual harassment precedent); Brankov v. Hazzard, 36 N.Y.S.3d 133, 134 (1st Dep't 2016) (analyzing federal interpretation of "immediate control test" for CHRL claims).

## A. Collateral Estoppel Precludes Plaintiff From Reasserting Previous Factual Allegations and Theories of the Case

Even if the Court concludes collateral estoppel is not dispositive of Plaintiff's claims entirely, it still applies to the individual allegations and arguments previously made by Plaintiff and discounted by the Court. For example, in Hudson v. Merrill Lynch & Co., Inc., 138 A.D.3d 511, 515 (1st Dep't 2016) (emphasis added), the Appellate Division stated:

> [W]e find that the motion court properly dismissed plaintiffs' claims of gender discrimination under the City Human Rights Law. At the outset, the federal court's decision collaterally estops plaintiffs from relitigating **many discrete factual issues** that were decided against them in the federal action.[5]

See also Simmons-Grant, 116 A.D.3d at 140-42 (1st Dep't 2014) (same). For these reasons, to the extent the District Court previously considered and rejected Plaintiff's arguments, she is collaterally estopped from relitigating such issues on this motion.

---

[5] Specifically, the Appellate Division ruled that the plaintiffs were collaterally estopped from relitigating (1) that plaintiffs were terminated because they were female; (2) that plaintiffs had failed to demonstrate knowledge of the decision makers that plaintiffs' performance reviews were inaccurate; and (3) that there was no evidence that male trainees were provided better mentoring and training than the female plaintiffs; (4) that certain remarks made by managers were not evidence of discrimination; and (5) whether a specific time period could demonstrate a causal nexus between the alleged discriminatory behavior and adverse job action. Hudson, 138 A.D.3d at 513-15.

**B.     Corizon is Entitled to Summary Judgment on Plaintiff's Claims As They Relate to Her Termination for Breach of Prison Security**

Plaintiff's October 2011 termination, the partial basis for all of her discrimination and retaliation claims, was in no way discriminatory or retaliatory.  At the time, Corizon was conducting an employee-wide email security sweep in connection with unrelated HIPAA security issues, and learned that documents containing *sensitive prisoner security data* – as well as private health information – has been sent by *unsecured transmission* from Plaintiff's work email address *to her personal account*.  This was a blatant security breach, and Plaintiff was suspended from work immediately.  Corizon conducted an investigation, presented its results and sent documents to DOC, and *DOC* indefinitely suspended Plaintiff's security credentials, leaving her unable to perform her job duties.  Corizon had no choice but to terminate her.  All this is undisputed.

Courts that have considered similar situations – especially where an employer terminates an employee after a third-party revokes their security credentials – have consistently found the action nondiscriminatory.  Most pertinently, in *Forrester I*, the Court reviewed the record and concluded, "Plaintiff has failed to offer sufficient evidence to permit the inference 'that an illegal discriminatory reason played a motivation role' in [her] suspension and termination."  Garaufis Op., at 42 (citations omitted).

1.     Plaintiff Was No Longer Qualified to Perform Her Job

Courts uniformly hold that an employee who was terminated because she lacked the security clearance or other job qualifications necessary for the position cannot maintain an employment discrimination case for said termination under CHRL.  Soloviev v. Goldstein, 104 F. Supp. 3d 232, 248-50 (E.D.N.Y. 2015) (violation of NCAA rules rendered plaintiff unqualified to serve as coach, and CHRL claim dismissed); accord Makky v. Chertoff, 541 F.3d

205, 215-16 (3d Cir. 2008) (revoked security clearance, a minimum job requirement, meant plaintiff could not establish case); Strong v. Orkand Corp., 83 Fed. Appx. 751, 753 (6th Cir. 2003) (inability to maintain security clearance, a job requirement, meant plaintiff not qualified); Fields v. Aramark Facility Servs., Inc., 240 F. Supp. 2d 453, 453-54 (D. Md. 2004) (third party revocation of security clearance, a job requirement, meant claim failed); McCoy v. Pennsylvania Power & Light Co., 933 F. Supp. 438, 443-44 (M.D. Pa. 1996) (same).

Here, it is undisputed that, as a job qualification, all Corizon employees required valid security clearance permitting them to access to Rikers Island, and that the loss of her security clearance rendered Plaintiff unqualified for her job.  Because Plaintiff was terminated for this reason and Plaintiff cannot establish a dispute of material fact regarding same, she cannot maintain her CHRL allegations as they pertain to her suspension and subsequent termination, and Corizon is entitled to summary judgment on this basis.

2.    Corizon Terminated Plaintiff For Legitimate, Nondiscriminatory Reasons

During a company-wide email security sweep, Corizon discovered that Plaintiff had sent sensitive and confidential prison security-related information by unsecured transmission to her personal email address.  These documents contained information such as inmate locations and gang affiliations, and their removal from the workplace violated both DOC's and Defendants' policies.  (Additionally, because they contained prisoner PHI, their transmission by unsecured email violated HIPAA.  See 45 C.F.R. §§164.306(a), 164.312(e).)  Every Corizon supervisor – as well as Erik Berliner, DOC Associate Commissioner for Health Affairs – ███████████

███████████.  As such, Plaintiff was suspended pending investigation of the incident, and when subsequently interviewed, offered no explanation of why such emails were sent from her workplace account.  When this information was presented to DOC, ***DOC***

indefinitely suspended her security credentials, meaning Plaintiff could not perform her job and was terminated.   The Magistrate Judge concluded that Plaintiff's "misconduct," by her "unsecured transmission of the BING emails [which] violated HIPAA, [Corizon's] privacy policies, and DOC's security protocol," was a legitimate, nondiscriminatory reason for Plaintiff's suspension and termination, DiSomma Decl., Exh. E, at 15; Plaintiff did not object to this decision, and it was affirmed by the District Court.   Garaufis Op., at 44-45.

Plaintiff's case is on all fours with House v. Wackenhut Services, Inc., 2012 WL 4017334 (S.D.N.Y. Aug. 20, 2012).   After House, a private security guard, was caught both sleeping and using a personal computer to play solitaire while on duty – both of which were absolutely forbidden by his employer's government contract and consisted firing offenses – **the government** demanded that House be removed from his post.   Id. at *1.   "Wackenhut, having no other choice, complied – and then promptly fired House."   Id.   While granting summary judgment, the court found that the government's "report and request for removal" from the premises constituted a "legitimate, nondiscriminatory reason for firing" House.   Id. at *15; see also Fink v. Winnebago County Sheriff, 2002 WL 221603, at *3-4, *7 (N.D. Ill. Feb. 12, 2002) (sheriff's office feared plaintiff's conduct compromised jail safety and revoked security clearance; employer had legitimate business reason to terminate her as employment was contingent upon maintaining such clearance); Fields, 240 F. Supp. 2d at 453-54 (summary judgment for employer when third-party government prison revoked security clearance of employee).

Similarly, in Lioi v. New York City Dept. of Health & Mental Hygiene, 914 F. Supp. 2d 567 (S.D.N.Y. 2012), DOH's confidentiality policy, which plaintiff executed, prohibited the disclosure of confidential information, including patient identifying information.   Id. at 580-81.

27

After DOH discovered that plaintiff had forwarded numerous work emails attaching STD testing data for specific patients to a coworkers personal account, she was terminated for violating the confidentiality policy and HIPAA.  Id. at 580-82.  The court found that DOH possessed a legitimate, nondiscriminatory justification and granted it summary judgment.  Id.; see also Milani v. Int'l Bus. Machines Corp., Inc., 322 F. Supp. 2d 434, 450, 458-59 (S.D.N.Y. 2004) (violation of business conduct guidelines and employment policies and practices is legitimate nondiscriminatory reason for termination under the CHRL).

Here, as the Court previously concluded, it is beyond dispute that Plaintiff's security breach violated multiple Corizon and DOC policies, as well as HIPAA, and resulted in the indefinite suspension of her security credentials, which in turn led to Plaintiff's termination. Therefore, Corizon has met its burden of production on this issue.

3.     Plaintiff Cannot Establish That Her Termination Was Pretextual

Given that Corizon has shown legitimate, nondiscriminatory reasons for Plaintiff's termination, Plaintiff must demonstrate by competent and non-conclusory evidence that Corizon's reasons were both false and that discrimination was the real reason.  See St. Mary's Honor Ctr., 509 U.S. at 515.  Here, Plaintiff can support neither conclusion.

The District Court previously concluded that Plaintiff failed to offer sufficient evidence to permit the inference "that an illegal discriminatory reason played a motivating role in [Plaintiff's] suspension and termination," Garaufis Op., at 42, a decision affirmed by the Second Circuit.  DiSomma Decl., Exh. G, at 2.

Even in the absence of the previous decision, Plaintiff's opportunity to show pretext is quite limited because, as a matter of law, Corizon cannot be liable for DOC's – an unaffiliated non-party's – decision to revoke her security clearance.  See, e.g., Johnson v. Port Auth. of New

28

York & New Jersey, 2009 WL 2227921, at *3 (E.D.N.Y. Mar. 22, 2013) (plaintiff failed to state discrimination claim when third party made security clearance determination).  Here, there is no dispute that (i) Corizon terminated Plaintiff for the loss of her security credentials; (ii) this was in turn caused by the unauthorized transmission of security-related emails from Plaintiff's account; (iii) this conduct violated DOC and Corizon policies, as well as HIPAA; and (iv) there is no admissible evidence – and thus no dispute on the issue – that discrimination was the "real" reason behind Corizon's actions.

        *i.*      *There is no admissible evidence of a "conspiracy" to plant the BING emails in Plaintiff's sent message folder*

        Given the paucity of evidence that might support her claims, Plaintiff appears to have concocted an unsupported and fantastical conspiracy to hoodwink DOC into revoking her security clearance so that Corizon could be somehow relieved of the burden of terminating her.  Putting aside how implausible such a conspiracy would be,[6] there is absolutely no admissible evidence that would support it, and therefore a finding of pretext.  For this reason, the District Court previously rejected Plaintiff's arguments concerning these issues.  Garaufis Op., at 42-52.

        First, and of most import, the emails themselves clearly indicate that they were sent from Plaintiff's work email address to her personal email address, as Plaintiff herself admits.[7]  Second, although Plaintiff several times stated that she did not remember sending the emails or was not sure whether she sent them, such lack of memory does not mean they were instead planted in her email, but merely that she did not recall sending them two years later.  Finally, although Plaintiff has alleged McNerney arrived at her office while or even before the emails were allegedly being

---

[6] For instance, if Corizon truly *wanted* to terminate Plaintiff (discriminatorily or otherwise), an at-will employee, they could have, for instance, (i) not rehired her in October 2010, before she alleged any discrimination, or (ii) not given her the alternative of a demotion to AA in May 2011 – again, before she alleged discrimination.  Instead, they bent over backwards to keep her employed.  Similarly, it makes no sense for Corizon to have gone to the lengths necessary to "plant" BING emails and then hope DOC would withdraw Plaintiff's security clearance to accomplish this task.

[7] Plaintiff was provided the metadata from these emails, which establishes this, during discovery.  SUMF ¶221.

sent, it is undisputed that the emails were sent between 2:42-2:44 p.m., that Plaintiff claimed McNerney arrived at her office to suspend her at about 3:45 p.m., and that it takes approximately ten (10) minutes to travel from Human Resources to OBCC.  In other words, there was more than enough time for McNerney to discover the emails after they were sent, and travel to Plaintiff's office to suspend her.

> ii. *There is no admissible evidence that Plaintiff was treated differently from other employees*

Short of some evidence that Corizon had planted the BING emails in Plaintiff's sent messages folder, she may only survive summary judgment by identifying some evidence that would create a dispute of material fact concerning whether she was treated differently than other, similarly-situated employees.  She cannot do so.

First, the email security sweep which discovered Plaintiff's breach was intended to address Corizon's legitimate concern about HIPAA breaches regarding the use of PHI.  See SUMF §L.  The concern arose well before September 2011 and Corizon's progressive steps to address it were well-documented, including publicizing relevant policies and taking corrective action when a violation was observed.  Id.  As part of their efforts, it is undisputed that Corizon eventually intuited a proactive, company-wide email review to educate employees who were violating this policy.  Id.

It is undisputed that (i) this email review began long before Plaintiff's email folders were reviewed, and it continued for weeks afterwards; (ii) this review was directed at all of Corizon's Rikers Island employees, and not just Plaintiff; (iii) there were no emails, other than Plaintiff's, located during the review wherein employees forwarded BING reports – or any other materials of a similarly-sensitive nature – over unsecured networks or to outside email addresses; (iv) Plaintiff's emails (as well as the results of its ensuing investigation) were brought to the attention

30

of DOC (and there is no evidence to suggest that Corizon would have taken a different course of action with a different employee in these circumstances); and (v) Plaintiff is the only employee whom Corizon was aware emailed BING reports outside of Corizon's secure email server.  In other words, there is nothing concerning the underlying email search, or Corizon's response to the discovery of Plaintiff's breach, that would support a finding of pretext.

While a plaintiff may establish pretextual termination by proving similarly situated employees not in a protected class were treated more favorably, the alleged similarly situated employees must be similarly situated "in all material respects."  Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997); see also Shah v. Wilco Sys., Inc., 27 A.D.3d 169, 171 (1st Dep't 2005) (applying Shumway standard to CHRL).  Yet, as the Court found, Plaintiff did not (and cannot) provide evidence that any other employee committed such an egregious breach of security yet was not reported to DOC or whose security clearance was indefinitely suspended by DOC yet was not terminated, Garaufis Op., at 50, so there are no adequate comparators for the Court to consider.

> iii.   Whether Plaintiff's security credentials were indefinitely suspended or revoked is irrelevant

Finally, Plaintiff has put great stock in the fact that her security credentials were indefinitely suspended rather than revoked, by DOC following her security breach.  But such distinction has no legal import, as already has been concluded by this Court.  Id.

First, whether Plaintiff's clearance was revoked or indefinitely suspended, the net result was the same – she was not permitted on Rikers Island, and therefore was not qualified for her position.  Indeed, years later, Plaintiff's clearance remained "indefinitely suspended."  Second, Berliner explained that ██████████████████████████████████████████████████ ██████████████████████████████████████████████████████████.  However, not

31

only was Plaintiff not cleared over the years since DOC made the decision to indefinitely suspend her, it is undisputed that she did not submit such a request to DOC or otherwise submit any new information in support of such a conclusion.  Third, Plaintiff cannot set forth any reason linking Corizon's decision to terminate her employment in light of her indefinite suspension to her protected status; Corizon retained the discretion to terminate Plaintiff based on the suspension of her security clearance (whether indefinite or note), and Plaintiff's disagreement with Corizon's decision is irrelevant and does not manufacture pretext.  DeMarco v. Holy Cross High Sch., 4 F.3d 166, 170-71 (2d Cir. 1993) ("in applying the McDonnell Douglas test to determine whether an employer's putative purpose is a pretext, a fact-finder does not, and indeed should not, evaluate whether a defendant's stated purpose in unwise or unreasonable"); Melman, 98 A.D.3d at 120-21 (same); Kelderhouse v. St. Cabrini Home, 259 A.D.2d 938, 939 (3rd Dep't 1999) (same).

For the above reasons, Plaintiff cannot establish a dispute of material fact concerning her suspension and termination, and Corizon is entitled to judgment as a matter of law on all claims premised on such actions.

### C.   Corizon is Entitled to Summary Judgment on Plaintiff's Claims as They Relate to Her Demotion for Poor Performance

Plaintiff's May 2011 demotion, the other basis for her discrimination and retaliation claims, was in no way discriminatory or retaliatory. The problems in the NIC, and Plaintiff's performance issues relating to same, were long-term, widespread, and well-documented. Plaintiff herself admitted NIC was in the "spot light."   SUMF ¶103.  It is undisputed that DOH – Corizon's client and overseer which had the ability, and was threatening, to revoke Corizon's contract – ███████████████████████ and that ████████████████████████ ████████████   Id. ¶¶131, 141.  Under the circumstances, Corizon acted reasonably in

removing Plaintiff and demoting her.

Courts that have considered situations where an adverse job action occurs in response to customer complaints have consistently found the action nondiscriminatory. Moreover, Plaintiff cannot identify any overt comments or adverse statistical information. Indeed, the evidence demonstrates that Corizon protected and honored FMLA usage at all times. As such, pretext is not present, and for the above reasons, as set forth in further detail herein, Corizon is entitled to summary judgment on this issue.

    1.    <u>Corizon Demoted Plaintiff For Legitimate, Nondiscriminatory Reasons</u>

Even accepting, *arguendo*, that Plaintiff can set forth a *prima facie* case of discrimination or retaliation, the burden then shifts to Corizon to articulate a legitimate, nondiscriminatory reason for her demotion. <u>Melman</u>, 98 A.D.3d at 113-14.

An employer articulates a legitimate, non-discriminatory reason where it demotes an at will employee because of that employee's inadequate job performance. <u>See</u> <u>Hudson</u>, 138 A.D.3d at 515-16 (granting summary judgment on CHRL claim where plaintiffs had worst performance records in their class); <u>Bennett</u>, 92 A.D.3d at 46 (affirming summary judgment on CHRL claim where plaintiff was found sleeping at his desk, under the influence of alcohol and unable to perform his job responsibilities); <u>Melman</u>, 98 A.D.3d at 116-17, 120 (failure to promote physician was nondiscriminatory because his performance had dwindled); <u>Paddock v. SUNY Brockport</u>, 418 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) ("There is no question that poor performance is a legitimate business reason to fire an employee."); <u>Petrisch v. JP Morgan Chase</u>, 789 F. Supp. 2d 437, 447 (S.D.N.Y. 2011) (citation omitted) (Defendants satisfied burden of "articulating a legitimate and nondiscriminatory reason for demoting Plaintiff" through record of poor performance); <u>Risco v. McHugh</u>, 868 F. Supp. 2d 75, 105 (S.D.N.Y. 2012) (citing <u>Fleming</u>

v. MaxMara USA, 371 Fed. Appx. 115, 117-18 (2d Cir. 2010) ("An employer has the prerogative to discharge an employee on the basis of subjective business judgments, for any reason that is not discriminatory; it is not the job of the Court to question the employer's means to achieve a legitimate goal."). By May 2011, Plaintiff's performance as HSA of NIC had fallen to unacceptable levels. Not only had she just received a 1.12 of 4 on her annual performance review, but **DOH** had informed Corizon that Plaintiff (among others) was ***inadequate*** and "***had to leave the facility***." SUMF ¶¶141-42 (emphasis added). Here, because Plaintiff was not satisfactorily performing her job duties, summary judgment for Corizon is appropriate.

This is especially true where the employer's own clients complain of or criticize that employee's job performance. See Joseph v. Owens & Minor Distribution, Inc., 5 F. Supp. 3d 295, 312 (E.D.N.Y. 2014), aff'd, 594 Fed. Appx. 29 (2d Cir. 2015) (granting summary judgment on CHRL claims to employer who terminated employee based on complaints from customer about "continuing inappropriate behavior"); Brower v. Cont'l Airlines, Inc., 62 F. Supp. 2d 896, 906 (E.D.N.Y. 1999) (summary judgment on CHRL claim appropriate given numerous customer complaints about the plaintiff airline counter employee); Lawless v. TWC Media Solutions, Inc., 487 Fed. Appx. 613, 616 (2d Cir. 2012) (employer terminated employee in large part because clients criticized employee's job performance and asked that she be removed from accounts); House, 2012 WL 4017334, at *15 (granting summary judgment when governmental client asked employer to remove plaintiff from premises and to not allow plaintiff to work at any other client-owned locations); Ifill v. United Parcel Serv., 2008 WL 2796599, at *7 (S.D.N.Y. July 17, 2008) (employer's receipt of customer complaints about the employee established legitimate, nondiscriminatory reason for the termination); Drummond v. IPC Int'l, Inc., 400 F. Supp. 2d 521, 531 (E.D.N.Y. 2005) ("Defendants have shown that they initially suspended plaintiff at the

request of [one of employer's clients] after [the client] complaint about plaintiff's alleged sexually inappropriate behavior…this proffer satisfies [employer's] burden."); Clarke v. One Source Facility Servs., Inc., 168 F. Supp. 2d 91, 97 (S.D.N.Y. 2001) ("Plaintiff's suspension and termination were valid because of his poor work performance supported by evidence of negative performance evaluations by various supervisors and complaints from clients at various job locations who were unsatisfied with Plaintiff's work.").

Here, Corizon demoted Plaintiff after her grossly substandard performance review and in response to communications from DOH that she needed to be removed from her position and threatening to place the NIC in receivership if this was not done. Under the circumstances, Corizon's decision was eminently reasonable – as the Magistrate Judge previously determined and was not challenged by Plaintiff, and thus affirmed by the District Court, Garaufis Op., at 32 – and Corizon has met its burden of production on this issue.

2.    Plaintiff Cannot Establish That Her Demotion Was Pretextual

Given that Corizon has shown legitimate, nondiscriminatory reasons for Plaintiff's demotion, Plaintiff must demonstrate by competent and non-conclusory evidence that Corizon's reasons were both false and that discrimination was the real reason.  See St. Mary's Honor Ctr., 509 U.S. at 515.  Again, Plaintiff can support neither conclusion. There is no dispute of material fact suggesting that Plaintiff was not demoted for performance reasons but rather due to discrimination.   Plaintiff's performance problems – which included a lack of rounding, responding to patient complaints and DOH directives, a disorganized facility with broken or missing equipment and supplies, and general lack of administrative oversight – were wide-ranging and well-documented.  Numerous supervisors – almost all of whom are *not* accused of discrimination – confirm that there were serious problems with her work.  Most importantly,

35

DOH has stated that Plaintiff's performance – as well as that of her colleagues in NIC – was insufficient and that she needed to be replaced.   For these reasons, the Court previously concluded:

> Having reviewed the evidence cited by the parties, the court agrees with Judge Bloom: 'Even setting plaintiff's 2010 performance review aside, an abundance of emails show that plaintiff failed to properly supervise the NIC between 2010 and 2011.   Those detailed complaints, from both DOG and patients, include the failure to properly stock nurse's stations, ensure compliance with hand-washing procedures, adequately staff the NIC, address the 'second-opinion box' requests, and properly track patients' admission, placement and follow-up appointments.

Garaufis Op., at 34.

Pretext is simply not present.   See, e.g., O'Connor v. Viacom Inc., 1996 WL 194299, at *5-6 (S.D.N.Y. Apr. 23, 1996), aff'd, 104 F.3d 356 (2d Cir. 1996) (when "plaintiff has provided no evidence sufficient to show that he performed his duties" satisfactorily in face of poor performance evaluations, no material dispute concerning pretext).   Thereafter, as the Court previously determined: "In sum, the court finds that Plaintiff has failed to offer sufficient evidence to permit the inference 'that an illegal discriminatory reason played a motivating role' in the demotion."   Garaufis Op., at 33.   For instance, as the Court stated:

> there is no indication that Yussuff or anyone else comingled express concerns about Plaintiff's disability or FMLA status with her actual demotion.   Instead, Plaintiff was ultimately demoted following a negative formal performance evaluation and comments by Defendants' executive staff and the independent DOH that the NIC was performing poorly.

Id. at 31.

Although Corizon's dissatisfaction with Plaintiff's performance built over time and was based on a multitude of different problems, it was best documented in her March 2011 performance review, in which she was simultaneously and independently reviewed by *six different supervisors*.   Only one of those reviewers – Yussuff – is accused of discrimination,

and he had given Plaintiff multiple positive reviews in the past (including while she was on FMLA), when her performance was better. See Payne v. State of New York Power Auth., 997 F. Supp. 492, 498 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999) (summary judgment granted when alleged "pretextual" negative performance reviews were given by same supervisors that had given past satisfactory performance reviews).  Moreover, all six reviews – though prepared by individuals observing her work in different capacities – were generally consistent and averaged to a final score of *1.12* of 4 (with 1 – not 0 – being the lowest grade possible). Garaufis Op., at 37 (recognizing that Plaintiff's performance review was unsatisfactory).

Plaintiff will likely argue that the significant drop in her score is evidence of pretext. This is not true.  See Moorer v. Grunman Aerospace Corp., 964 F. Supp. 665, 674 (E.D.N.Y. 1997) (prior good evaluations of plaintiff's work alone do not establish that later poor evaluations are pretext under CHRL claim); Pergament v. Fed. Express Corp., 2007 WL 1016993, at *12 (E.D.N.Y. Mar. 30, 2007) (same under SHRL).  Instead, not only did Plaintiff's performance drop from previous years, but DOH's increased focus on NIC during 2010-11 caused Corizon to focus its own review more critically on the facility and its problems during that time.

Plaintiff's diminished performance is only further confirmed by DOH's observations and instructions to Corizon regarding the NIC.  Specifically, as explained by Dr. Homer Venters, DOH's Assistant Commissioner of Correctional Health Services and its direct liaison with Corizon, there needed to be ██████████████████████████████████████████ ███████████████████████████████ SUMF ¶¶131, 141.  He continued:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

████████████████████████████████████████

Id. ¶142 (emphasis added).   Therefore, the listed supervisors were all removed from their positions. DOH's undisputed position is important not only because it was the ultimate business reason Plaintiff was demoted, see Point II(C)(1), *supra*, but also because it provides independent confirmation –  from a DOH administrator that Plaintiff indisputably considered a good friend, no less – that Plaintiff's performance was so bad that she needed to be replaced.  See Saenger v. Montefiore Med. Ctr., 706 F. Supp. 2d 494, 509 (S.D.N.Y. 2010)(for CHRL claim, "multitude of serious, independent, documented, and therefore good faith complaints against Plaintiff undermine any attempt to paint Defendant's stated reason for dismissing Plaintiff as trumped-up or pretextual"); Finn v. New York State Office of Mental Health-Rockland Psychiatric Ctr., 2011 WL 4639827, at *14 (S.D.N.Y. Oct. 6, 2011); El-Bey v. City of New York, 151 F. Supp. 2d 285, 299 (S.D.N.Y. 2001) ("clear that an employee cannot… make a showing of pretext when his complaints of discriminatory treatment are preceded by a well documented record of employer complaints about the employee's performance").

   Here, Plaintiff cannot establish any pretext to overcome Corizon's legitimate, nondiscriminatory business reason for her demotion and "it is not the function of the fact-finder to second-guess business decisions regarding what constitutes satisfactory work performance." Soderberg v. Gunther Int'l, Inc., 124 Fed. Appx. 30, 32 (2d Cir. 2005) (quotation omitted); see Melman, 98 A.D.3d at 120-21 (quoting Bailey v. New York Westchester Sq. Med Ctr., 38 A.D.3d 119, 124 (1st Dep't 2007)); Saenger, 706 F. Supp. 2d at 508 (plaintiff "must do more than challenge the employer's decision as contrary to 'sound business or economic policy,' since such an argument does not give rise to the inference that the [adverse action] was due to [discrimination]," and "[i]t is not for the Court to decide whether the complaints [against

38

plaintiff] were truthful or fair, as long as they were made in good faith."); Baldwin, 65 A.D.3d at

966  (court "should not sit as a super-personnel department that reexamines an entity's business

decisions"); Kelderhouse, 259 A.D.2d at 939 ("challenge…to the correctness of an employer's

decision does not, without more give rise to the inference that the [adverse action] was due to

[discrimination]."). Furthermore, in the face of legitimate, nondiscriminatory reasons supporting

termination, a discrimination plaintiff cannot defeat summary judgment with conclusory and

unsubstantiated allegations of pretext.  See Pace, 257 A.D.2d at 105; Matter of Miller Brewing

Co. v. State Div. of Human Rights, 66 N.Y.S.2d 937, 938 (1985); see also Pergament, 2007 WL

1016993, at *12 (citations omitted) (plaintiff's subjective opinion about her own performance is

insufficient to give rise to a triable issue of fact regarding pretext under SHRL claim); Revere v.

Bloomingdale's, Inc., 2006 WL 3314633, at *8 (E.D.N.Y. Nov. 14, 2006) (citation omitted)

("Plaintiff may not establish pretext by rationalizing her errors or by blaming others.");

Gambello v. Time Warner Commc'ns, Inc., 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002)

(disagreement with conclusions supervisors drew from incidents plaintiff admits occurred and

subjective belief that they should not have reflected badly on performance is not enough to show

pretext). Such guidance is even more authoritative when the decision to demote Plaintiff was

ultimately made by Don Doherty, the same person who had several times promoted her. See

Cooper v. Morganthau, 2001 WL 868003, at *6 (S.D.N.Y. July 31, 2001) (in CHRL action: "The

underlying rationale for the same actor inference is simple: it is suspect to claim that the same

manager who hired a person in the protected class would suddenly develop an aversion to

members of that class."); Grady v. Affiliated Cent. Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("when

the person who made the decision to fire was the same person who made the decision to hire, it is

difficult to impute to her an invidious motivation that would be inconsistent with the decision to

hire"); <u>Payne</u>, 997 F. Supp. at 498 (same).  Instead, when, as here, the only evidence supporting

plaintiff's case is a subjective belief she was discriminated against, summary judgment is

appropriate.   <u>Holowecki v. Fed. Express Corp.</u>, 644 F. Supp. 2d 338, 353 (S.D.N.Y. 2009)

(citation omitted).

This Court considered a similar matter in <u>Benn v. City of New York</u>, 2011 WL 839495,

at *1 (E.D.N.Y. Mar. 4, 2011) (Garaufis, J.), where a teaching fellow raised claims of a hostile

work environment and discriminatory and retaliatory termination under the CHRL. The plaintiff

failed to clock in on time (although disputed he was actually late), received poor performance

reviews from one of two examiners, and failed to take a required test.  <u>Id</u>. at *2-3.  Plaintiff

alleged that defendant's employees asked where he came from, mocked his foreign accent, and

treated plaintiff abusively (and in a way, accordingly to plaintiff, that other non-protected class

fellows were not treated).  <u>Id</u>. at *3-4.  Nevertheless, the Court found that there was no inference

of  discrimination to support a *prima facie* case, noting that he failed to take a required test, his

time cards indicated he punched in late (including after being warned), and "performance

reviews…documented serious and specific concerns with plaintiff's performance teaching and

his ability to follow instructions."  <u>Id</u>. at *6-7.  Moreover, the Court found these incidents,

coupled with the alleged discriminatory comments and treatment, would still fail to demonstrate

pretext. <u>Id</u>. at *8.  Like in <u>Benn</u>, Plaintiff's performance problems are well-documented, and the

alleged discriminatory conduct consists only of personal perceptions of harsh treatment, which

are belied by the evidence of record; like in <u>Benn</u>, summary judgment is justified.

Corizon addresses several specific remaining arguments in turn:

> i.   *Statistical evidence requested by Plaintiff not only fails to support*
> *pretext but confirms that Corizon does not discriminate against*
> *their employees.*

During discovery and in her previous opposition, Plaintiff identified one or two other

employees that utilized FMLA and were later terminated by Corizon.  Of course, such self-serving, anecdotal and piecemeal examples cannot be considered "proof" of anything.  Indeed, Plaintiff's selective identifications ignore the many FMLA-utilizing employees, of whom most utilized more time off than Plaintiff, that were not terminated by Corizon, SUMF ¶¶279-82, and her unsupported suppositions that the identified employees must have been discriminated against constitute, at best, inadmissible hearsay and cannot support a finding of pretext.  See, e.g., Gambello, 186 F. Supp. 2d at 224 (E.D.N.Y. 2002) (granting summary judgment on SHRL claim).

Instead, the actual statistical evidence shows that Corizon does not discriminate on the basis of FMLA status.  This evidence demonstrates that employees from 2008 (when Plaintiff's first request for intermittent FMLA was approved) through April 2013 were actually *much less likely* to be terminated if they utilized FMLA:

|  | Total | Number Terminated | Percentage |
|---|---|---|---|
| **Total Employees** | 1653 | 565 | 34.18% |
| **Total Employees utilizing FMLA** | 167 | 23 | 13.77% |

SUMF ¶¶279-82.

> ii.   *Yussuff's emails concerning Plaintiff's poor attendance or criticisms of her work product cannot support a finding of pretext.*

Plaintiff argues that Fazal Yussuff treated her in a hostile manner due to her use of intermittent FMLA leave – which, when utilized, caused Plaintiff to arrive later than her otherwise scheduled start time – by sending her hostile emails concerning her poor attendance or criticizing her work performance. This is incorrect. Plaintiff first points to a handful of emails that Yussuff sent her – ***over a period of seven years*** – that she claims were harassing in nature. he majority of these emails were sent to all the HSAs – including a majority of individuals not in

plaintiff's protected class – and merely ask that they make every attempt to timely arrive in the morning to avoid negative effects on operations. Even the five emails sent directly to Plaintiff (again, over seven years), SUMF ¶79, contain mild, constructive language along these lines,[8] had no connection to days where Plaintiff took FMLA leave, included consistent language about Plaintiff's lateness in emails both *before* and after her first utilizing FMLA leave, and were eminently reasonable in the face of Plaintiff's habitual tardiness to work. This was no theoretical concern – considering that 95% of the time Plaintiff was late it was unrelated to FMLA, see Lovland v. Employers Mut. Cas. Co., 674 F.3d 806, 812-13 (8th Cir.), cert. denied, 133 S. Ct. 345 (2012) (summary judgment granted when decision to terminate for excessive tardiness improperly included 18 FMLA-protected hours, where the remaining 93.75 non-FMLA protected hours "dwarfed" that amount); Benn, 2011 WL 839495, at *7 (no dispute of fact and habitual tardiness supports termination when no evidence showed decision-maker knew timesheets were incorrect, as plaintiff had asserted), and Plaintiff points to no evidence that other employees with similar histories of tardiness received less than the one gentle email or so per year on the subject, as Plaintiff did.

Similarly, Plaintiff has complained that Yussuff criticized her work. These criticisms, however, never were linked to her FMLA requests or diabetes, and as a supervisor, it was Yussuff's job to criticize substandard work. Moreover, the inferior nature of Plaintiff's work and preparation has been confirmed by other individuals not alleged to have discriminated. Finally, even if incorrect, Yussuff's beliefs regarding the quality of Plaintiff's work is insufficient to create a dispute of material fact, Roge v. NYP Holdings, Inc., 257 F.3d 164, 169 (2d Cir. 2001) (nondiscriminatory reason for termination is fine even if based on false premise); Saenger, 706 F.

---

[8] For instance, Yussuff emailed Ms. Forrester: "I am concerned about your inconsistent schedule.  As the HAS for the facility it is expected that you lead by example and by that I mean you need to be at work on time…most of the time you are not at work at 8:00 a.m. … Kindly make every effort to be at work at 8:00 a.m." SUMF ¶79.

Supp. 2d at 508-09 (complaints leading to termination must only be made in good faith, not necessarily be accurate), her dissatisfaction with Yussuff's demeanor – described by Venters as ███████ SUMF ¶51 – in delivering criticisms of her work is not actionable, see, e.g., Kodengada v. Int'l Bus. Mach. Corp., 88 F. Supp. 2d 236, 243 (S.D.N.Y.), aff'd, 242 F.3d 366 (2d Cir. 2000) (personality conflicts, absent discriminatory animus, are insufficient to support a SHRL discrimination claim), and her contentions are belied by Yussuff's satisfactory reviews of Plaintiff's performance prior to 2011, during which time she contends he knew of her diabetes and two of which occurred after she began intermittent FMLA leave.  See Point II(C)(2), *supra*.

>     *iii.*    *Corizon's review of Plaintiff's eligibility for FMLA leave cannot support a finding of pretext.*

In 2010, after he learned that several employees had applied to renew their intermittent FMLA leave for the same underlying reasons as their previous leave, Yussuff asked Jerry Donahue, Director of HR, whether such employees were legally eligible to do so.  Plaintiff was informed that her eligibility was in question, HR followed up with the Department of Labor, and when the question was answered, Plaintiff, Yussuff and the other employees were informed of the positive decision. Moreover, during this review, Plaintiff remained able to take FMLA leave as appropriate. Under these circumstances, a review of Plaintiff's eligibility for FMLA leave by Corizon cannot support a finding of pretext.[9]  See, e.g., Bailey v. Pregis Innovative Packaging, Inc., 2009 WL 2970395, at *4 (N.D. Ind. Sept. 14, 2009) (exercising caution in reviewing eligibility for leave does not "remotely suggest[] pretext").

>     *iv.*    *At all times, Corizon engaged in the interactive process concerning any reasonable accommodations for Plaintiff's asserted disability.*

Plaintiff admitted that she only made two types of requests for reasonable

---

[9] For instance, employers are permitted to investigate proper medical eligibility for leave, see 29 U.S.C. § 2613(c)-(d), and even to investigate and take action against an employee concerning an "honest suspicion" (even if incorrect) of FMLA leave abuse.  See Scruggs v. Carrier Corp., 688, F.3d 821, 825-26 (7th Cir. 2012).

accommodations from Corizon.   Both were addressed appropriately, and neither supports a finding of pretext.   First, after Plaintiff was demoted, she was provided access to a refrigerator to store her insulin in response to her request.   SUMF ¶¶162-65; see, e.g., Moody v. New York City Dept. of Corrections, 153 Fed. Appx. 788, 789 (2d Cir. 2005) (access to refrigerator was reasonable accommodation).

Second, although Plaintiff was already on intermittent FMLA leave, she requested "flexibility in [her] work schedule" as a "reasonable accommodation" to her disability.   SUMF ¶¶169-76.   In response, and as Plaintiff was already receiving intermittent leave, Eileen McNerney attempted to engage Plaintiff to discuss her needs regarding a flexible work schedule. Id. ¶¶171, 176.   At first, despite multiple emails and phone calls from McNerney, Plaintiff never spoke with McNerney and refused to provide further guidance in her emailed nonresponses.   Id. ¶¶172, 176.   Corizon's attempts – and Plaintiff's nonresponses to those attempts – cannot support a finding of discrimination, and therefore, pretext.   See, e.g., Donofrio v. New York Times, 2001 WL 1663314, at *7-8 (S.D.N.Y. Aug. 24, 2001), adopted by 2002 WL 230820 (S.D.N.Y. Feb. 14, 2002) (granting summary judgment on CHRL claim); Economou v. Caldera, 2000 WL 1844773, at *24 (S.D.N.Y. Dec. 18, 2000).   Moreover, Plaintiff already had the flexibility to utilize intermittent FMLA leave whenever medically necessary, meaning such a concern had been reasonably accommodated.   See Querry v. Messar, 14 F. Supp. 2d 437, 445 (S.D.N.Y. 1998); Bielski v. Green, 674 F. Supp. 2d 414, 424 (N.D.N.Y. 2009).   Indeed, later on, Plaintiff did speak with McNerney – who tried to explore an alternative schedule that might assist Plaintiff – yet Plaintiff did not provide any accommodation beyond utilizing her intermittent FMLA leave as needed.

**D.      Corizon is Further Entitled to Summary Judgment on Plaintiff's Claims as They Relate to Retaliation**

Plaintiff asserts retaliation claims under the CHRL in her Verified Complaint.  In addition to the reasons set forth above in Point I and Points II(A)-(C) – which apply equally to her retaliation claims – Corizon is also entitled to summary judgment on Plaintiff's retaliation claims because, in pertinent part, the alleged "protected activity" occurred after the claimed adverse job actions,[10] and as this Court noted, Plaintiff's suspension and termination occurred too long after her claim of discrimination to raise an inference of retaliatory causation:

> Plaintiff ignores clear authority from the Second Circuit that a retaliation claim fails at the summary judgment stage where plaintiff produces no evidence beyond "temporal proximity."

Garaufis Op., at 52.

1.      Plaintiff's May 2011 Demotion Cannot Support a Retaliation Claim.

"[T]o be actionable, the protected activity must precede the actions which plaintiff claims were retaliatory."  St. Louis v. New York City Health & Hosp. Corp., 682 F. Supp. 2d 216, 236 (E.D.N.Y. 2010) (granting summary judgment on federal claims and declining supplemental jurisdiction on CHRL claims).  Here, Plaintiff's first reference to any alleged discrimination occurred in response to her May 2011 demotion, SUMF ¶156, meaning that demotion – and anything beforehand – could not have been in retaliation for same.  See also Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 581 (S.D.N.Y. 2010) (in SHRL action, when "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does

---

[10] CHRL law mimics federal law with respect to employment retaliation claims, specifically regarding the fourth prong of CHRL retaliation analysis: a causal connection between the protected activity and the alleged retaliatory conduct.  See Baldwin, 888 N.Y.S.2d at 6; Pace, 692 N.Y.S.2d at 224.  Plaintiffs cannot "avoid summary judgment by merely pointing to the inference of causality resulting from the sequence in time of the events."  Forrest, 3 N.Y.3d at 313 (internal quotation marks and citations omitted).

not arise").

Plaintiff also cannot rely on any temporal relationship between her allegation of discrimination on May 6, 2011 and her September 20, 2011 suspension (and ensuing termination) in support of her retaliation claim for same.   See Baldwin, 888 N.Y.S.2d at 6 (granting summary judgment; five months too long to support inference of causation); Pace, 692 N.Y.S.2d at 224 (ten month gap insufficient to support CHRL retaliation claim); Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").   A time frame of five-to-six months – as here – is far too long to support such an inference.

### 2.   Plaintiff's EEOC Charge Cannot Support a Retaliation Claim.

Moreover, Corizon learned of the filing of Plaintiff's EEOC complaint on October 19, 2011, SUMF ¶277, several weeks after her suspension for breaching prison security, her subsequent investigatory interview, and Corizon's report to DOC.   Given that Corizon was not further consulted by DOC concerning her security breach after that time, it could not have been a cause of its decision to indefinitely suspend Plaintiff's security clearance, nor its subsequent nondiscretionary decision to terminate Plaintiff.   "[A]n employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct."   Melman, 98 A.D.3d at 129 (citing Clark County School Dist. v. Breeden, 532 U.S. 268, 272 (2001)).

### E.   Corizon is Entitled to Summary Judgment on Plaintiff's Claims as They Relate to Hostile Work Environment

In addition to the reasons why Corizon's conduct was not discriminatory in any way

regarding Plaintiff's termination and demotion, see Points II-III, *supra*, Corizon also did not discriminate against Plaintiff in any way that created a hostile work environment.   The Court already rejected Plaintiff's arguments in *Forrester I*:

> [A]s Judge Bloom concluded, Plaintiff fails to establish how Defendants' actions – the vast majority of which are facially neutral – relate in any way to her medical condition.

Garaufis Op., at 16; see also DiSomma Decl., Exh. G, at 2.

An employee suing for discriminatory harassment based upon a hostile work environment must prove that she was treated less well than other employees on the basis of her protected class.  See Williams, 61 A.D.3d at 78.  However, here the alleged hostile conduct was neither discriminatory in nature nor occurred because of Plaintiff's membership in a protected class.  See Chin v. New York City Hous. Auth., 965 N.Y.S.2d 42, 44 (1st Dep't 2013) (affirming summary judgment on CHRL hostile work environment claim where plaintiff failed to demonstrate that employer's conduct and were related to protected characteristic); Hernandez v. Kaisman, 103 A.D.3d 106, 111-12 (1st Dep't 2012) ("Of course, there can be no claim for sexual discrimination, including that based on a hostile work environment, unless the plaintiff was treated differently *because of* her sex") (emphasis in original); see also Redd v. New York State Div. of Parole, 2010 WL 1177453, at *2 (E.D.N.Y. Mar. 24, 2010) (Garaufis, J.) (citation omitted); Raum v. Laidlaw Ltd., 173 F.3d 845, at *2 (2d Cir. 1999) (claims failed as a matter of law where alleged "crass and offensive" remarks were not predicated on plaintiff's membership in protected class); Figueroa v. City of New York, Dept. of Sanitation, 118 Fed. Appx. 524, 526 (2d Cir. 2004) (court should not consider evidence that has no direct "linkage or correlation" to protected characteristic); Kodengada, 88 F. Supp. 2d at 243 (under SHRL, personality conflicts, absent discriminatory animus, are insufficient to support a hostile work environment claim). Instead, an "environment that would be equally harsh for all workers, or that arises from personal

47

animosity, is not actionable under the civil rights statutes." Williams v. Woodhull Med. & Mental Health Ctr., 891 F. Supp. 2d 301, 326 (E.D.N.Y. 2012) (Garaufis, J.) (SHRL claim) (citation omitted).

Moreover, the work environment must be *objectively* hostile or abusive.  Forrest, 3 N.Y.3d at 311; Minckler v. United Parcel Serv., Inc., 132 A.D.3d 1186, 1187 (3rd Dep't 2015). But even if Plaintiff could prove that Yussuff's conduct was motivated by her membership in a protected class – which she cannot – no rational factfinder could conclude that Yussuff's exchange of five facially neutral "harassing" emails and his general criticisms of Plaintiff's performance – which were confirmed by DOH testimony and correspondence – *over the course of seven years* created an objectively discriminatory environment at Rikers.[11]  See, e.g., Forrest, 3 N.Y.3d at 311-12 (2004) (affirming summary judgment as three racial slurs allegedly made over six years was insufficient to support CHRL hostile work environment claim); McPherson v. NYP Holdings, Inc., 2005 WL 2129172, at *8 (E.D.N.Y. Sept. 1, 2005) (Garaufis, J.) (three racial comments over two years are "isolated" and are not hostile work environment under CHRL; also collecting cases).

---

[11] In evaluating hostile work environment claims under the CHRL, "[s]tray remarks…even if made by a decision maker, do not, without more, constitute discrimination." Melman, 98 A.D.3d at 125 (three remarks by supervisor that did not demonstrate bias against protected class and were not probative of discrimination under CHRL); Serdans v. New York & Presbyterian Hosp. 112 A.D.3d 449, 450 (2013) (comments by hospital staff that plaintiff – who suffered from neurological disorder – "brought [her situation] upon [herself] and should "take [her] assets elsewhere" were not derogatory or indicative of discriminatory animus under CHRL).

48

## <u>CONCLUSION</u>

Based on the foregoing reasons, Corizon respectfully requests that it be granted summary judgment on the entirety of Plaintiff's Verified Complaint.

Respectfully submitted,

**SAIBER LLC**
*Attorneys for Defendant*
*Corizon Health, Inc.*


By:     /s Jakob B. Halpern
        Jennine DiSomma
        Jakob B. Halpern
        18 Columbia Turnpike, Suite 200
        Florham Park, New Jersey 07932
        T:      (973) 622-3333
        F:      (973) 622-3349

Dated: October 14, 2016