D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

BERNICE FORRESTER

                  Plaintiff,

        -against-

CORIZON HEALTH, INC.,

                  Defendant.

**MEMORANDUM & ORDER**

**15-CV-06964 (NGG) (LB)**

-----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      After Plaintiff Bernice Forrester was terminated from her job at Rikers Island's North

Infirmary Command, she brought an employment discrimination action against her employer,

Prison Health Services, Inc., and its successor, Defendant Corizon Health, Inc., under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-213, the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, the Family and Medical Leave Act

("FMLA"), 29 U.S.C. §§ 2601-54, and the New York City Human Rights Law ("NYCHRL"),

N.Y.C. Admin. Code §§ 8-101 to 8-131.[1] In that case, this court granted the defendants' motion

for summary judgment as to Plaintiff's federal claims, declined to exercise supplemental

jurisdiction over Plaintiff's NYCHRL claims, and dismissed the NYCHRL claims without

prejudice. (Mem. & Order ("M&O") (Forrester I Dkt. 81) at 55.) The Second Circuit affirmed

---

[1] For ease of reference, the court refers to Prison Health Services, Inc., as "PHS"; Corizon Health, Inc., as "Corizon"; North Infirmary Command as "NIC"; Plaintiff's ADA, ADEA, and FMLA claims as her "federal claims"; and Plaintiff's former suit before this court, Forrester v. Prison Health Services, Inc., No. 12-CV-363 (NGG) (E.D.N.Y.), as "Forrester I." In 2011, PHS's parent company merged with another company to create Corizon. (Mem. & Order ("M&O") (Forrester I Dkt. 81) at 2 n.2.)

1

that decision. Forrester v. Prison Health Services, Inc., 651 F. App'x 27 (2d Cir. 2016) (summary order).

Plaintiff duly refiled her suit against Defendant in New York State court, alleging substantially the same facts but solely asserting claims under the NYCHRL for disability discrimination (on both "adverse employment action" and "harassment" theories) and retaliation. (Compare Am. Compl. ("Forrester I Am. Compl.") (Forrester I Dkt. 16), with Compl. (Dkt. 11-1); Def. Reply to Pl. Response to Def. Rule 56.1 Statement ("Def. Rule 56.1 Reply") (Dkt. 40-1) ¶¶ 293-94.) Defendant has again moved for summary judgment, this time on the grounds that this court's judgment in Forrester I precludes Plaintiff from asserting or establishing her NYCHRL claims, and that she has failed to show that she was discriminated against because of her disability or retaliated against because of protected conduct. (Def. Mot. for Summ. J. (Dkt. 37); Def. Mem. of Law in Support of Mot. for Summ. J. ("Def. Mem.") (Dkt. 37-1).)

For the reasons stated below, the court GRANTS Defendant's motion for summary judgment.

## I.    BACKGROUND

The court assumes the parties' familiarity with the factual history of this case, which is set forth in detail in Magistrate Judge Bloom's Report and Recommendations ("R&R") and this court's opinion in Forrester I. (R&R (Forrester I Dkt. 76); M&O.) A brief summary of that history follows to guide the discussion below.

Plaintiff worked at the medical facilities at the New York City correctional facility on Rikers Island for more than two decades, performing well and receiving several promotions. (M&O at 2.) In 2004, Plaintiff was promoted to health service administrator ("HSA"), and, in 2009, transferred to NIC. (Id.) As HSA, Plaintiff was the senior administrative officer of the

NIC, and was responsible for supervising administrative staff, acting as a liaison with the City of New York Department of Correction and the Department of Health, and overseeing other administrative matters. (Id.) In 2005, Director of Operations Fazal Yussuff began to supervise her. (Id.)

Plaintiff suffers from diabetes, which occasionally causes her blood sugar levels to fluctuate in the morning, making her feel confused and disoriented. (Id.; R&R at 3-4.) When Plaintiff was unwell, she would wait for her blood sugar to stabilize before commuting to work. (Pl. Dep. Tr. ("Pl. Dep.") (Decl. of Joshua Bernstein ("Bernstein Decl."), Ex. 6 (Dkt. 39-3)) 96:11-17.) On these days, she would call in to work to report that she would be late. (M&O at 3.) When, in 2008, these imbalances became more frequent, Plaintiff requested intermittent leave under the FMLA, permitting her to come into work late on days when her blood sugar was high or low. (Id.) PHS granted Plaintiff's request for leave, although it questioned whether she misused leave on one occasion and instructed her to give notice of when she would be arriving at work on days when she was running late. (Id. at 4.) Yussuff also questioned whether Plaintiff was eligible to take intermittent leave for two consecutive terms for the same condition (which PHS Director of Human Resources Jerome Donahue established she was eligible to do) (id. at 3-4), sent Plaintiff several emails expressing concerns with her time and attendance (id. at 4-5), and sent other groups of employees emails urging them to arrive on time (id. at 5). From 2006 until October 2011, Plaintiff was late to work 232 times, of which 40 instances of lateness were recorded as "FMLA leave," 49 instances were marked as due to sickness, and 121 were marked "late." (Id. at 4.)

In August 2010, Department of Health employees complained to PHS about the administration of the NIC, and the Department of Health threatened to take over the facility. (Id.

3

at 5.) The Department of Health liaison responsible for monitoring PHS's operations, Homer Venters, indicated to PHS that new leadership was needed at the NIC. (Id.) In response, PHS decided to convert the HSA position into a clinical position and terminated Plaintiff due to her lack of a clinical degree. (Id.) Venters expressed concerns about this plan to Donald Doherty, a senior vice president of PHS, and PHS temporarily reinstated Plaintiff to her position with back pay for the three days that she did not work between her termination and her reinstatement. (Id. at 5-6; R&R at 8.) For her part, Plaintiff requested reassignment to an HSA position in another jail and complained that Yussuff had harassed her for taking FMLA leave. (M&O at 5; R&R at 8-9.)

In March 2011, a panel of executive staff members, including Yussuff, conducted Plaintiff's performance review for the previous year. (M&O at 6.) In this review, Plaintiff received a composite score of 1.12 on a four-point scale, which fell between "needs improvement" and "meets expectations" on PHS's rubric. (Id.) In April 2011, a team of PHS executives discovered "horrific conditions" in the NIC, which one executive described as unsanitary, "cluttered with debris," and missing up-to-date supplies and sufficiently full oxygen tanks. (R&R at 11.) The same month, a Department of Health monitor reported to Plaintiff that the NIC's main center was not adequately supplied for patient care and that various machines there had not been checked since the previous December. (Id. at 10.) The Department of Health also reported to PHS several patient complaints, including that staff had failed to change an incontinent patient's briefs and the cast and bandages on another patient's leg in a timely manner. (Id. at 11.) In the spring of 2011, Venters recommended that the NIC's leadership, including Plaintiff, should be transferred. (Id.) Doherty determined that, in light of Plaintiff's existing performance problems, she should be terminated or demoted to the position of

4

administrative assistant to an HSA. (M&O at 6.) Plaintiff accepted the demotion but stated that she viewed the move to be discriminatory. (Id.)

Also in 2011, to PHS learned that a high-profile inmate's health information had been accessed inappropriately and that there had been violations of Defendant's email encryption policy. (R&R at 15.) In response, PHS (and, following the merger, Corizon) reminded all employees of the company's "zero tolerance policy" for violations of patient privacy law, and Doherty authorized employee relations manager Eileen McNerney to audit employees' emails. (M&O at 7.) As part of this audit, McNerney reviewed Plaintiff's emails and found ten emails that Plaintiff had forwarded to her personal email account with the term "BING" in the subject line. (Id.) Attached to these emails were unencrypted documents containing daily "BING reports," which were generated by the Department of Corrections and contained inmates' personally identifiable information, including information about their gang affiliations, health status, and whether they were HIV-positive. (Id.) Plaintiff was immediately suspended pending an investigation. (Id. at 8) On October 21, 2011, the Department of Corrections informed Doherty that it deemed these emails to be a security breach and that Plaintiff's security clearance, which she needed in order to work on Rikers Island, was indefinitely suspended. (Id.) Six days later, Defendant fired Plaintiff's, citing her security breach and the consequent loss of her security clearance. (Id.)

## II.    PROCEDURAL HISTORY

### A.  Forrester I

On January 24, 2012, Plaintiff filed a pro se complaint in this court, alleging that PHS and Defendant had violated the ADEA by firing her, giving her a "sub-par" evaluation, demoting her, and ultimately firing her again, all on the basis of her age. (Compl. (Forrester I Dkt. 1) at 1,

3-4.)  After obtaining counsel, Plaintiff filed an amended complaint that asserted claims for age

discrimination and disability discrimination under the NYCHRL (Am. Compl. (Forrester I

Dkt. 16) ¶¶ 74-79), retaliation under the NYCHRL (id. ¶¶ 80-82), age discrimination under the

ADEA (id. ¶¶83-85), disability discrimination and retaliation under the ADA (id. ¶¶ 86-91), and

interference with FMLA rights (id. ¶¶ 92-97).  Following discovery, the defendants moved for

summary judgment.  (Def. Mot. for Summ. J. (Forrester I Dkt. 65); Def. Mem. of Law in Supp.

of Mot. for Summ. J. ("Forrester I Def. Mem.") (Forrester I Dkt. 65-1); Pl. Mem. in Opp'n to

Def. Mot. for Summ. J. ("Forrester I Pl. Opp'n") (Forrester I Dkt. 67).)  The court referred this

motion to Magistrate Judge Lois Bloom.  (Order Referring Mot. for Summ. J. (Forrester I Dkt.

74).)

On January 5, 2015, Judge Bloom issued an R&R recommending that the court grant

Defendant's motion for summary judgment as to Plaintiff's ADA and FMLA claims and decline

to exercise supplemental jurisdiction over her NYCHRL claims.[2]  (R&R (Forrester I Dkt. 76).)

After the Plaintiff objected to the R&R, this court entered an order, dated March 30, 2015,

adopting the R&R in part and modifying it in part, namely by considering certain evidence that

the R&R had excluded, expressly analyzing Plaintiff's ADA claims using a mixed-motive

evidentiary framework, and clarifying the analysis of Plaintiff's retaliation claim.  (Obj. to R&R

(Forrester I Dkt. 77); M&O at 19 n.9, 29-30, 49 n.19.)  The court granted Defendant's motion for

summary judgment in part and declined to exercise supplemental jurisdiction over Plaintiff's

NYCHRL claims, which it dismissed without prejudice.  (Id. at 55.)  Plaintiff appealed from that

order to the Second Circuit, which affirmed on the grounds that Plaintiff had failed to establish

---

[2] In response to the Defendant's motion for summary judgment, Plaintiff "withdrew" her ADEA claims.  (R&R at 1 n.2; M&O at 10 n.4.)  She has not asserted age-discrimination claims in this action.

that Defendant's proffered reasons for demoting or firing her were pretextual and that her remaining arguments lacked merit. Forrester, 651 F. App'x at 27.

## B. **Forrester II**

While Plaintiff's appeal from Forrester I was pending, she filed a complaint in New York State Supreme Court in the County of New York. (Compl.) The new complaint alleged facts largely identical to those previously alleged in Forrester I (compare "Forrester I Am. Compl., with Compl.; Def. Rule 56.1 Reply ¶¶ 293-94) and asserted three causes of action under the NYCHRL: disability discrimination under a "harassment" theory, disability discrimination under an "adverse employment action" theory, and retaliation in violation of the NYCHRL.[3] (Id. ¶¶ 84-92.) Defendant removed the case to the U.S. District Court for the Southern District of New York, invoking federal jurisdiction based on diversity of citizenship, see 28 U.S.C. § 1332 (Notice of Removal (Dkt. 1) ¶¶ 9-10), and moved for the case to be transferred back to the Eastern District of New York (Mot. to Transfer Case (Dkt. 10); Consent Order Transferring Case (Dkt. 11)), where it was reassigned to this court.

On January 30, 2017, Defendant moved for summary judgment. (Def. Mot. for Summ. J.) Defendant first argues that the doctrine of collateral estoppel bars Plaintiff from asserting NYCHRL claims that parallel the federal claims adjudicated in Forrester I, as well as from relitigating the court's determinations in Forrester I that Plaintiff had not demonstrated the existence of a genuine dispute as to whether Plaintiff's demotion or termination were motivated by discrimination or retaliation, or that any "harassment" she endured in the workplace was discriminatory. (Def. Mem. at 9-13, 24; Def. Mem. of Law in Further Supp. of Its Mot. for

---

[3] The NYCHRL recognizes both adverse employment actions and workplace harassment as forms of discrimination. See Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 40 (N.Y. App. Div. 2009).

Summ. J. ("Def. Reply") (Dkt. 40) at 7-10.) Second, Defendant argues that, in light of evidence of Plaintiff's poor job performance and responsibility for a breach of information security and inmate privacy, no reasonable factfinder could conclude that her demotion or termination were motivated by discrimination. (Def. Mem. at 25-32 (termination); id. at 32-40 (demotion).) Defendant further contends that Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to whether she was retaliated against (id. at 45-46) or subjected to an objectively hostile work environment because of her disability (id. at 46-48).

## III.   LEGAL STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper in a case in which, "resolv[ing] all ambiguities and draw[ing] all reasonable factual inferences in favor of the party against whom summary judgment [is] sought," Johnson v. Perry, 859 F.3d 156, 169 (2d Cir. 2017), a reasonable jury could not return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must grant a motion for summary judgment if the nonmoving party has not made a "sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To demonstrate the existence of a genuine issue of material fact, the nonmoving party must cite admissible evidence in support of his or her contentions, see Fed. R. Civ. P. 56(c); Local Rule 56.1(b), (d), and may not rely on "[c]onclusory allegations," Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990), or "the mere allegations or denials of his pleading," Anderson, 477 U.S. at 248.

## B. Issue Preclusion

The doctrine of issue preclusion (also known as "collateral estoppel") "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002). Under federal law,[4] issue preclusion applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Id. at 288-89; see also Restatement (Second) of Judgments § 27. "If the issues [are] not identical, there is no collateral estoppel." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 400 (2d Cir. 2011) (alteration in original) (quoting NLRB v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999)). "[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1306 (2015) (alteration in original) (quoting 18 Wright & Miller § 4417, p. 449). The party invoking issue preclusion bears the burden of showing that two proceedings involve identical issues. Bader v. Goldman Sachs Grp., Inc., 455 F. App'x 8, 9 (2d Cir. 2011) (summary order); 18 Wright & Miller § 4405, pp. 110-12 & nn.39-40.

---

[4] Defendant contends that because this is a diversity case, New York law supplies the relevant standard for issue preclusion. (Def. Mem. of Law at 5 n.1.) Because Forrester I was decided by a federal court under its jurisdiction to hear cases arising under federal law, however, the preclusive effect of the court's judgment in that case is determined by federal, not state law. See Taylor v. Sturgell, 553 U.S. 880, 891 (2008); 18B Charles A. Wright et al., Federal Practice & Procedure § 4468, pp. 63-66 (2d ed. 2002) ("Wright & Miller") ("[F]ederal law controls preclusion effect of a federal-question judgment in a subsequent diversity action."). Nothing turns on this distinction, however, because there is "no discernible difference between federal and New York law concerning res judicata and collateral estoppel." Marvel Characters, Inc., 310 F.3d at 286.

## C. **NYCHRL**

### 1. Discrimination

The NYCHRL prohibits employers from terminating an employee or otherwise "discriminat[ing] against such person in compensation or in terms, conditions or privileges of employment" because of the employee's disability. N.Y.C. Admin. Code § 8-107(1)(a)(2), (3). To prevail on a discrimination claim under the NYCHRL based on a disparate-treatment theory, an employee "need only show differential treatment—that she [was] treated 'less well'—because of a discriminatory intent." Mihalik v. Credit Agricole Cheuvreux North Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (quoting Williams v. N.Y. City Hous. Auth., 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)). Such differential treatment may take the form of "tangible" employment actions such as "hiring or firing," or instead take the form of workplace harassment. Id. To constitute discrimination under the NYCHRL, workplace harassment need not be "severe or pervasive," as is required to make out a hostile-work-environment claim under Title VII or (the court assumes)[5] the ADA. Shultz v. Congregation Shearith Israel of City of New York, 867 F.3d 298, 308 (2d Cir. 2017) (Title VII); Fox v. Costco Wholesale Corp., 239 F. Supp. 3d 564, 576-77 (E.D.N.Y. 2017) (ADA).

Like federal law, the NYCHRL only prohibits workplace mistreatment that is motivated by discrimination on account of a protected status. Under the NYCHRL, a plaintiff must show that he or she was treated less well "because of" a protected status. N.Y.C. Admin. Code § 8-107(1). In order to make such a showing, a plaintiff need only demonstrate that discrimination

---

[5] It remains an open question in this circuit whether the ADA provides a cause of action for hostile work environment. See Bonura v. Sears Roebuck & Co., 62 F. App'x 399, 400 n.3 (2d Cir. 2003) (summary order) (reserving this question but noting that other circuits have held that hostile-work-environment claims are cognizable under the ADA); Sefovic v. Mem'l Sloan Kettering Cancer Ctr., No. 15-CV-5792 (PAC), 2017 WL 3668845, at *7 (S.D.N.Y. Aug. 23, 2017) (noting that this question remains unsettled).

was "one of the motivating factors for the defendant's conduct," not that discrimination was the "but-for" cause of the plaintiff's differential treatment. Williams, 872 N.Y.S.2d at 40 n.27; see also Mihalik, 715 F.3d at 110 n.8. New York State courts have held that, on a motion for summary judgment, a plaintiff may establish the existence of a genuine dispute over whether the defendant acted with discriminatory intent by using either the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a "mixed-motives" analysis, see Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), or some combination of these evidentiary frameworks. See Melman v. Montefiore Med. Ctr., 946 N.Y.S.2d 27, 30 (N.Y. App. Div. 2012); Bennett v. Health Mgmt. Sys., Inc., 936 N.Y.S.2d 112, 124 (N.Y. App. Div. 2011); cf. Mihalik, 715 F.3d at 110 n.8 (noting uncertainty in whether Bennett modified the McDonnell Douglas burden-shifting framework for NYCHRL claims).

Under the NYCHRL, a defendant is entitled to summary judgment if there is no genuine issue of material fact as to whether discrimination played a role in the defendant's actions. See Mihalik, 715 F.3d at 110 n.8. Thus, under the McDonnell Douglas framework, summary judgment is appropriate if, once a plaintiff has made out a prima facie case of discrimination and the defendant has offered legitimate reasons for its actions, "no reasonable jury could conclude either that the defendant's 'reasons were pretextual' or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least 'in part on discrimination.'" Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 76 (2d Cir. 2015) (citations omitted) (quoting Melman, 946 N.Y.S.2d at 35). Likewise, under the mixed-motives framework, summary judgment is appropriate if the plaintiff has failed to adduce direct or circumstantial evidence "from which it could rationally be inferred that . . . discrimination was a

motivating factor, even in part, for [the defendant's] treatment of him" or her. Melman, 946 N.Y.S.2d at 41.[6]

The NYCHRL is construed "broadly in favor of discrimination plaintiffs," Albunio v. City of New York, 947 N.E.2d 135, 137 (N.Y. 2011), within certain bounds. The NYCHRL is "not a general civility code," Williams, 872 N.Y.S.2d at 40-41 (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998)), and does not make employers liable for hostile conduct that is not motivated by discrimination, see Mihalik, 715 F.3d at 110. Nor is all discriminatory treatment actionable under the NYCHRL: a defendant may escape liability by showing that its conduct "consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" Williams, 872 N.Y.S.2d at 41 (quoting Oncale, 523 U.S. at 81). Accordingly, courts may grant summary judgment in "truly insubstantial cases" in which "a reasonable jury could only conclude that the conduct amounted to no more than a petty slight." Mihalik, 715 F.3d at 111.

    2. Retaliation

The NYCHRL also prohibits employers from retaliating against "any person . . . because such person has . . . opposed any practice forbidden under [the NYCHRL]." N.Y.C. Admin. Code § 8-107(7)(i). To "oppose[]" a forbidden practice, a plaintiff need not file a formal complaint or initiate a lawsuit, but may simply "[make] clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she [thinks] his treatment of the victim [is] wrong.'" Mihalik, 715 F.3d at 112 (alterations in original omitted) (quoting Albunio, 947 N.E.2d at 138). Moreover, to constitute retaliation, the employer's conduct "need not result

---

[6] The court observes again, however, that the McDonnell Douglas and mixed-motives frameworks ask the same ultimate question: "whether Plaintiff presented 'sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination.'" (M&O at 28 (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999)).)

in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment," but must only "be reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7). The assessment of whether an employer's conduct would be reasonably likely to dissuade a person from engaging in protected activity should "be made with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." Mihalik, 715 F.3d at 112 (quoting Williams, 872 N.Y.S. at 34). A defendant is entitled to summary judgment on an NYCHRL retaliation claim only if there is no genuine dispute as to whether retaliation played a role in the defendant's actions. See Ya-Chen Chen, 805 F.3d at 76.

## IV.  DISCUSSION

The court first addresses the parties' dispute over the record before the court. Next, the court considers the extent to which its decision in Forrester I precludes Plaintiff from asserting her NYCHRL claims. Finally, the court considers the merits of those claims, to the extent they are not barred by issue preclusion.

### A.  Additions to the Record

The parties dispute the precise scope of the record before the court. (Def. Reply at 5-7.) At the conference held prior to Defendant's filing of its motion, the parties agreed that no further factual discovery was necessary and that the parties would rely on the factual record developed in Forrester I. (Aug. 3, 2016, Hr'g Tr. 3:16-4:14; Aug 3, 2016, Min. Entry; Pl. Resp. to Def. Rule 56.1 Statement (Dkt. 39-1) ¶ 301.) The court authorized the parties to update their statements of fact required by Local Rule 56.1 and clarified that it would consider permitting

further discovery of evidence relevant to liability if it denied, in whole or in part, Defendant's motion for summary judgment. (Aug. 3, 2016, Hr'g Tr. 6:20-8:10.)

Notwithstanding this agreement, Plaintiff attached two additional, unsigned and unsworn "affidavits" to her opposition to Defendant's motion for summary judgment. In the first, Plaintiff states that Doherty urged her to go on disability following her first termination and when discussing her demotion. (Dec. 2016, Pl. Aff. (Bernstein Decl., Ex. 79 (Dkt. 39-4)).) Plaintiff argues that this new evidence undermines the court's conclusion in Forrester I that Doherty only referenced her disability after she first called her health into question (M&O at 36-37) and supports an inference that discrimination at least partially motivated her initial termination and demotion (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J. ("Pl. Opp'n") (Dkt. 39) at 28-29).[7] In the second, Marilyn Silva, former deputy director of nursing for Defendant on Rikers Island, states that Yussuff told her to discipline tardy employees regardless of whether they were late pursuant to approved medical leave and that Yussuff frequently remarked that employees were taking excessive FMLA leave and "abusing" or "taking advantage" of their leave. (Dec. 2016, Marilyn Silva Aff. (Bernstein Decl., Ex. 80 (Dkt. 39-4)) ¶¶ 1, 4-5, 7-8.) Plaintiff argues that, because she took FMLA leave as an accommodation for her disability, this affidavit is "damning evidence" that her demotion was discriminatory. (Pl. Opp'n at 30-33.)

The court will not consider these affidavits. First, the affidavits were not sworn under penalty of perjury and are therefore inadmissible. See Fed. R. Civ. P. 56(c), advisory

---

[7] During her deposition, Plaintiff stated that during the May 2011 meeting at which she was given the option of being demoted or fired, Doherty asked her if she had ever thought about "going out on disability." (Pl. Dep. 330:14-18.) She subsequently stated that she could not remember whether Doherty mentioned disability first or whether he instead mentioned disability in response to her first mentioning her health (id. 330:24-332:16), as Doherty indicated (M&O at 37). The court concluded that Doherty's comment about her disability did not show that Plaintiff's demotion lacked a legitimate, nondiscriminatory basis. (Id.)

committee's note; <u>United States v. All Right, Title & Interest in Real Prop. & Appurtenances</u>, 77 F.3d 648, 657-58 (2d Cir. 1996) ("The submission of [an] unsworn letter was an inappropriate response to the government's motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."). Second, Plaintiff does not cite these affidavits in her Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts or Rule 56.1 Statement of Material Facts in Dispute. <u>See</u> Local Rule 56.1(b). Third, Plaintiff's counsel expressly agreed to rely on the factual record developed in <u>Forrester I</u>, which also presented the NYCHRL claims at issue here. Plaintiff may not submit affidavits targeted to demonstrate the existence of a genuine issue of material fact at this late stage of the proceeding. The court reiterates that its review is limited to the record developed in <u>Forrester I</u>.

## B. **Issue Preclusion**

The court next considers the extent to which its prior judgment on Plaintiff's federal claims in <u>Forrester I</u> precludes Plaintiff from asserting or establishing NYCHRL claims based on the same facts and substantially the same allegations.

The court's judgment on Plaintiff's federal claims in <u>Forrester I</u> does not <u>necessarily</u> preclude Plaintiff from asserting NYCHRL claims based on the same allegations at issue in the first case, as Defendant contends. Defendant asserts that Plaintiff is precluded from asserting her NYCHRL claims because those claims simply track the ADA. (Def. Mem. at 8, 9.) This argument might once have had some merit: prior to 2005, some courts interpreted the NYCHRL in line with federal and state antidiscrimination law. <u>See</u> <u>Mihalik</u>, 715 F.3d at 108. In 2005, however, the New York City Council enacted the Local Civil Rights Restoration Act, N.Y.C. Local L. No. 85 (the "Restoration Act"), which provided that NYCHRL claims must be construed "liberally" and in at least as plaintiff-friendly a manner as similarly worded federal and

state laws. See N.Y.C. Admin. Code § 8-130; Mihalik, 715 F.3d at 109. Following the Restoration Act, courts have recognized meaningful differences in how plaintiffs must plead and prove claims under the NYCHRL, versus under federal or state law.[8] See, e.g., Goffe v. NYU Hosp. Ctr., 201 F. Supp. 3d 337, 358 (E.D.N.Y. 2016). Accordingly, the Second Circuit has held that the Restoration Act requires that district courts analyze NYCHRL claims separately from, and independently of, analogous federal claims. See Velazco v. Columbus Citizens Found., 778 F.3d 409, 410 (2d Cir. 2015) (per curiam); Mihalik, 715 F.3d at 109-10. According preclusive effect to Forrester I without careful consideration of whether the issues decided under federal law in that case are identical to those presented under city law in this action would appear to suffer from the same defect.

The doctrine of issue preclusion is nevertheless relevant to this case. Plaintiff may not relitigate determinations of fact or mixed questions of law and fact, see United States v. Moser, 266 U.S. 236, 242 (1924), that were raised, litigated, and necessarily decided in Forrester I. Where Plaintiff is precluded from establishing an element of an NYCHRL claim, the court must enter summary judgment for Defendant on that claim. Cf. Wyly v. Weiss, 697 F.3d 131, 141 (2d Cir. 2012) (prior determination that counsel's performance was not deficient would preclude any subsequent malpractice claim requiring a finding that counsel's performance was deficient). Defendant has identified several specific determinations, made in Forrester I, that it argues preclude elements of Plaintiff's NYCHRL claims (Def. Mem. at 9-13; Def. Reply at 1-5); the court considers these separately below with respect to each of Plaintiff's claims.

---

[8] The court notes that, in arguing that the NYCHRL simply tracks federal discrimination law, Defendant relies on cases that predate the Restoration Act or that themselves erroneously rely on cases decided prior to the Restoration Act. (Def. Mem. at 8.)

Relying on <u>Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP</u>, 981 N.Y.S.2d 89 (N.Y. App. Div. 2014), Plaintiff argues that issue preclusion applies, at most, only to "discrete factual questions that do not implicate the application of law to facts or the differences between federal and NYCHRL claims." <u>See id.</u> at 93. (Pl. Opp'n at 49-50.) This argument is unpersuasive. As discussed above, federal law, not state law, governs the preclusive effect of the court's judgment in <u>Forrester I</u>. In any event, the court is not convinced that New York State courts would apply issue preclusion so narrowly. <u>Simmons-Grant</u> held only that the fact that the prior court had decided a "discrete factual question[] . . . not implicat[ing] the application of law to facts" was one reason to accord the prior court's determination issue-preclusive effect, not that <u>only</u> such determinations may be preclusive. <u>Id.</u> To the contrary, the Appellate Division has held that a federal court's determination, rendered in the adjudication of federal claims, that a defendant had not been shown to have acted with discriminatory or retaliatory intent, may be preclusive in subsequent NYCHRL litigation. <u>See</u> <u>Milione v. City Univ. of New York</u>, 153 A.D.3d 807, 2017 WL 3611982, at *2 (N.Y. App. Div. 2017). <u>Cf.</u> <u>Simmons-Grant</u>, 981 N.Y.S.2d at 93-94 ("A federal court's factual findings under the federal analytical framework <u>may</u> preclude state courts from adjudicating city law claims."). Even if New York issue-preclusion law were to apply, the court is satisfied that determinations made in <u>Forrester I</u> about whether Plaintiff had shown that Defendant acted with discriminatory intent would be entitled to preclusive effect in this case.

1. <u>Discrimination – Adverse Employment Action Theory</u>

Defendant contends that Plaintiff's NYCHRL adverse-employment-action claim fails because, in <u>Forrester I</u>, the court determined that Plaintiff had not presented evidence "that an illegal discriminatory reason played a motivating role" in her May 2011 demotion and September-October 2011 suspension and termination. (M&O at 33, 42.) There is no dispute that

17

this issue was actually raised in Forrester I, that Plaintiff had a full and fair opportunity to litigate it, and that its resolution was necessary to support a valid and final judgment on the merits of Plaintiff's ADA adverse-employment-action discrimination claim; the parties only dispute whether the issue is identical as between Forrester I and this case.

The court concludes that Defendant has carried its burden of showing that the issue of whether it acted with discriminatory intent in demoting, suspending, and firing Plaintiff is identical as between Forrester I and this case. Because the record before the court is identical to the record in Forrester I, there are no changes in "controlling facts" or circumstances that might alter the court's assessment of Plaintiff's evidentiary showing in Forrester I. See Wyly, 697 F.3d at 143. Nor are there differences in the legal standards relevant to this issue: the court in Forrester I applied the same causation standards and evidentiary framework that it would have applied to Plaintiff's parallel discrimination claim under the NYCHRL.

First, the court analyzed Plaintiff's ADA adverse-employment-action claim using the same causation standard that applies to NYCHRL discrimination claims. In Forrester I, the court noted that "it is an 'open question' in this circuit whether Plaintiff can satisfy her burden by showing that her disability was a 'substantial' or 'motivating' factor in the adverse employment action, rather than the 'but-for' cause." (M&O at 23.) The court therefore considered her ADA discrimination claim under the more forgiving "motivating factor" standard (id. at 23, 29), which is the same causation standard that applies to NYCHRL discrimination claims, see Williams, 872 N.Y.S.2d at 40 n.27.

Second, the court considered the sufficiency of Plaintiff's evidence in support of this claim using both the McDonnell Douglas burden-shifting and mixed-motives frameworks. In Forrester I, the court also noted that it is unsettled whether, following the Supreme Court's

decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), the mixed-motives framework applies to ADA claims. (M&O at 26-27.) The court therefore considered Plaintiff's ADA discrimination claim using both the McDonnell Douglas burden-shifting and mixed-motives frameworks. (Id. at 30-33.) Likewise, courts must assess NYCHRL discrimination claims using both these frameworks. See Melman, 946 N.Y.S. 2d at 30.

Plaintiff's attempts to distinguish the NYCHRL from federal law are unavailing. First, Plaintiff argues that Velazco, 778 F.3d at 411, recognizes that the "motivating factor" causation inquiry is less demanding under the NYCHRL than under federal law. (Pl. Opp'n at 48.) Velazco merely held, however, that NYCHRL claims must be analyzed under a "motivating factor," rather than a "but-for" causation standard. See id. at 411. Second, Plaintiff argues that the standard for showing "partial discrimination" under the NYCHRL is more plaintiff-friendly than the standard for showing mixed-motives discrimination under federal law. (Pl. Opp'n at 24.) The Appellate Division has, however, indicated that "partial discrimination" is synonymous with "mixed motives" discrimination. See Bennett, 936 N.Y.S.2d at 120 ("It is not uncommon for covered entities to have multiple or mixed motives for their action, and the City HRL proscribes such "partial" discrimination . . . ."). Although Plaintiff argues that the Restoration Act requires courts to interpret every aspect of the NYCHRL more liberally than federal and state antidiscrimination law—and thus that the NYCHRL must provide a more plaintiff-friendly evidentiary framework than federal law (Pl. Opp'n at 24)—she cites no authority so holding. To the contrary, the New York City Council has instructed that federal law may be used to interpret the NYCHRL so long as the NYCHRL is at least as protective of discrimination victims as federal law:

> "Interpretations of . . . federal statutes with similar wording may be
> used to aid in interpretation of [the NYCHRL], viewing similarly

worded provisions of federal and state civil rights laws as a floor
below which the City's Human Rights law cannot fall, rather than a
ceiling above which the local law cannot rise."

Restoration Act § 1.

Lastly, Plaintiff argues that under the NYCHRL, unlike under federal law, she can

survive summary judgment under a mixed-motives analysis without adducing "direct" or

"smoking gun" evidence of discrimination. (Id. at 23.) To the extent that Plaintiff argues that

federal law requires her to make an initial showing of "non-'circumstantial' evidence," such

argument misapprehends the distinct meaning of "direct evidence" in this context, see Tyler v.

Bethlehem Steel Corp., 958 F.2d 1176, 1183-86 (2d Cir. 1992), a distinction the court noted in

Forrester I (M&O at 25-26). Although Plaintiff argues that the NYCHRL claims require less

evidence of discrimination to survive summary judgment than claims under federal law, it is

well-settled that "[w]hile claims under the NYCHRL are more liberally construed than claims

under [federal and state law], the NYCHRL 'does not alter the kind, quality or nature of evidence

that is necessary to support or defeat a motion for summary judgment under Rule 56.'"

Deshpande v. Medisys Health Network, Inc., No. 07-CV-375 (KAM), 2010 WL 1539745, at *22

(E.D.N.Y. Apr. 16, 2010) (citation omitted) (quoting Julius v. Dep't of Human Res. Admin., No.

08-CV-3091, 2010 WL 1253163, at *5 (S.D.N.Y. March 24, 2010)).[9] Although the NYCHRL

can make conduct actionable as discrimination that would not be actionable under federal law, it

---

[9] In any event, the court identifies no meaningful distinction between federal and city law on this point. In a federal
mixed-motives case, the plaintiff's initial burden is simply to present "evidence sufficient to demonstrate that
discrimination was 'in fact a 'motivating' or 'substantial' factor in the employment decision." Vahos v. Gen.
Motors Corp., No. 06-CV-6783 (NGG), 2008 WL 2439643, at *5 (E.D.N.Y. June 16, 2008) (quoting de la Cruz v.
New York City Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 23 (2d Cir. 1996)). Likewise, under the
NYCHRL, the plaintiff must "come forward with . . . evidence—either direct or circumstantial—from which it
could be inferred that . . . discrimination was a motivating factor, even in part, for [the defendant's] treatment of
[him or] her." Melman, 946 N.Y.S.2d at 41.

cannot force a federal court to hold a trial on claims as to which there is no genuine dispute of material fact.

The issue of whether Defendant was motivated by discriminatory intent when it demoted, suspended, and ultimately fired Plaintiff is identical as between Forrester I and this case. Accordingly, the court's determination in Forrester I that Plaintiff had failed to show that these adverse employment actions were motivated by discriminatory intent precludes Plaintiff from establishing that those actions were "because of" discriminatory intent under the NYCHRL. The court therefore GRANTS Defendant's motion for summary judgment on Plaintiff's adverse-employment-action discrimination claim.

2. Discrimination – Harassment Theory

Defendant next contends that Forrester I also precludes Plaintiff's claim that it harassed her because of her disability. (Def. Mem. at 13; Def. Reply at 9-10 & nn.8-9.) In Forrester I, the court granted summary judgment on Plaintiff's hostile-work-environment claim, noting both that Plaintiff had failed to establish that her mistreatment rose to the "severe or pervasive" level required for it to be actionable under the ADA (M&O at 14-16, 21-22) and that she had not shown "how Defendants' actions—the vast majority of which are facially neutral—relate in any way to her medical condition" (id. at 16). The court also concluded that, even though Judge Bloom had not expressly considered certain evidence that Yussuff was "hostile to [Plaintiff] . . . [and] demeaning and insulting" in meetings, this evidence would not affect the court's analaysis because Plaintiff had not shown "any connection between Yussuff's purported mistreatment of Plaintiff and her disability." (Id. at 22.) As Defendant concedes, the court's determination that Plaintiff had not shown "severe or pervasive" mistreatment is not preclusive, because the NYCHRL forbids discriminatory treatment regardless of whether such treatment is "severe or pervasive." See Williams, 872 N.Y.S.2d at 40-41. (Def. Reply at 3.) Defendant argues,

21

however, that, regardless of how severely Plaintiff was mistreated, she is precluded from arguing that this mistreatment was because of her disability. (Def. Mem. at 12-13.)

The court agrees that Forrester I precludes Plaintiff from relitigating the issue of whether she was harassed at least partly because of her disability. The question of whether Defendant's treatment of Plaintiff was motivated by discrimination was raised and litigated in Forrester I: Defendant's motion for summary judgment focused on this issue (Forrester I Def. Mem. at 16-36), arguing that Yussuff, whose alleged treatment of Plaintiff forms the sole basis for her harassment claims (Pl. Opp'n at 40-41), was a demanding, even "mercenary," boss, but that he did not treat Plaintiff harshly because of her disability (Forrester I Def. Mem. at 34, 38-39.) This determination was "necessary," for issue-preclusion purposes, to its judgment on her ADA hostile-work-environment claim, notwithstanding that the court also held that Plaintiff had not shown that her alleged mistreatment was severe or pervasive. See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 45 (2d Cir. 1986) ("The general rule in this Circuit is that 'if a court decides a case on two grounds, each is a good estoppel.'" (quoting Irving Nat. Bank v. Law, 10 F.2d 721, 724 (2d Cir. 1926) (L. Hand, J.))). Thus, the only question is whether this issue is identical as between the two actions.

The court concludes that Defendant has carried its burden of showing that the issue of the whether Defendant mistreated Plaintiff because of her disability is identical as between the two actions. In order to establish the existence of a hostile work environment under the ADA, Plaintiff needed to show that "she was harassed because of her" disability. See Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008). Likewise, to establish harassment in violation of the NYCHRL, Plaintiff must show that Defendant treated her less well because of her disability. Mihalik, 715 F.3d at 110. Although the court in Forrester I did not

22

expressly discuss the causation standard and evidentiary frameworks applicable to ADA hostile-work-environment claims, it should be remembered that "hostile work environment" is simply a theory by which a plaintiff may show discrimination. In Forrester I, the court extensively discussed the causation standard and evidentiary frameworks applicable to ADA discrimination claims in the context of Plaintiff's adverse-employment-action claim, and there is no indication that it subjected Plaintiff's hostile-work-environment claim to a more rigorous causation standard or cabined the means by which she could demonstrate the existence of a genuine dispute as to whether Defendant subjected her to a hostile work environment because of her disability. In the absence of any meaningful response by Plaintiff to Defendant's arguments on this point, the court is satisfied that this issue is identical as between the two actions. (Def. Mem. at 12-13; Pl. Opp'n at 39-42.)

The court concludes that its determination in Forrester I that Plaintiff had not shown that Defendant mistreated her because her disability is entitled to preclusive effect. Plaintiff is therefore precluded from establishing that she was harassed because of her disability. Consequently, the court GRANTS Defendant's motion for summary judgment on Plaintiff's harassment claim.

3. Retaliation

Lastly, the court considers whether its judgment in Forrester I precludes Plaintiff from asserting her retaliation claim under the NYCHRL. In Forrester I, the court determined that Plaintiff had failed to make the requisite evidentiary showing to survive summary judgment on her ADA retaliation claim. (M&O at 52.) In particular, the court noted that the only evidence Plaintiff had produced in support of her retaliation claim was temporal proximity between the protected activity and adverse employment actions, which was insufficient to establish that those actions were motivated by retaliation. (M&O at 52.) Although the court noted that Gross, 557

23

U.S. at 167, most likely required ADA discrimination claims to be analyzed using the more exacting "but-for" causation standard (id. at 27 n.12), the court nevertheless considered the issue using the more forgiving multiple-motive standard (id. at 52 n.21). Regardless of the applicable standard, Plaintiff had only shown that she was demoted, suspended, and fired some time after complaining about discrimination, which was insufficient to demonstrate retaliatory animus. (Id.) Defendant contends that this determination precludes Plaintiff from establishing that it retaliated against her because of her complaints about disability discrimination. (Def. Mem. at 11-12 (citing M&O at 52).)

Here, too, Defendant has carried its burden of establishing that issue preclusion applies. The issue of whether Plaintiff's demotion and later suspension and termination were motivated by retaliatory animus was raised, litigated, and necessary to the court's judgment on her ADA retaliation claim. This issue is also identical to the issue of whether Defendant acted with retaliatory intent for the purposes of Plaintiff's NYCHRL retaliation claim. In order to establish retaliation under the ADA, Plaintiff needed to show that Defendant demoted, suspended, and fired her in response to her opposition to a practice forbidden under that statute—i.e., discrimination on the basis of disability. 42 U.S.C. § 12203(a). (Forrester I Pl. Opp'n at 35.) Likewise, to establish retaliation under the NYCHRL, Plaintiff must show that she opposed Defendant's alleged disability discrimination (Pl. Opp'n at 42) and that Defendant took action against her at least partly because of a retaliatory motive. See Mihalik, 715 F.3d at 112, 116.

Plaintiff appears to argue that NYCHRL retaliation claims differ from ADA retaliation claims because the former do not require the employer to take "material" or "tangible" adverse action against the complainant. (Pl. Opp'n at 42.) This distinction is illusory. While it is true that a plaintiff must show that he or she suffered a "materially adverse" action as a result of

24

of engaging in protected conduct in order to make out a prima facie case of retaliation under the ADA, Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012), that does not mean that only demotions, terminations, and similar events constitute "retaliation." (Pl. Opp'n at 42.) Instead, an allegedly retaliatory action is "materially adverse" when it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Ragusa v. Malverne Union Free Sch. Dist., 381 F. App'x 85, 90 (2d Cir. 2010) (summary order) (alterations omitted and emphasis added) (quoting Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010)). This standard tracks the NYCHRL, under which retaliatory action "need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment" but nevertheless "must be reasonably likely to deter a person from engaging in protected activity," including complaints that discrimination is wrong. N.Y.C. Admin. Code § 8-107(7) (emphasis added). The court is satisfied that the issue considered in Forrester I as to whether Plaintiff's demotion, suspension, or termination were motivated by retaliatory animus is identical to the issue presented in this case.[10]

Because these issues are identical, issue preclusion applies, and Plaintiff is barred from establishing that her demotion, suspension, or ultimate termination were at least partially motivated by retaliatory animus. Accordingly, the court GRANTS Defendant's motion to dismiss Plaintiff's NYCHRL retaliation claim to the extent it is based on these adverse employment events.

---

[10] Plaintiff also argues that because the NYCHRL applies to employment actions that are not "material," the court must consider her 2011 suspension and termination separately. (Pl. Opp'n 43.) Considering these events separately does not alter the court's determination that Plaintiff failed to show that these actions were at least partially motivated by retaliatory intent.

## C. NYCHRL Retaliation – 2010 Termination

In opposition to Defendant's motion for summary judgment, Plaintiff now also argues

that her October 2010 initial termination was also retaliatory. (Pl. Opp'n at 42.) Because she did

not raise this argument in Forrester I (cf. Forrester I Pl. Opp'n at 35-38), the court never

considered it, and the court's determination that Defendant did not act with a retaliatory motive

in demoting, suspending, and ultimately firing her does not preclude this claim. The court need

not consider whether the doctrine of claim preclusion[11] bars Plaintiff from asserting this claim,

however, because she has offered insufficient evidence from which a rational factfinder could

conclude that her initial termination was even partially motivated by retaliation.

Plaintiff contends that she first opposed her alleged disability discrimination in May

2010, when she claims that she called Donahue to complain that she was "tired of [Yussuff]

harassing [her] about [her] FMLA [and her] ADA" and wanted to make a formal complaint. (Pl.

Dep. 232:20-233:3.) In May 2010, Plaintiff also sent FMLA anti-retaliation regulations to

Donahue. (May 17, 2010, Email from Pl. to Donahue (Bernstein Decl., Ex. 57 (Dkt. 39-3)).)

Plaintiff contends that a jury could infer that PHS (and thus, Defendant) was motivated by

retaliation when it terminated her five months later from the temporal proximity of her

termination to her complaints and from evidence that, she argues, shows that Defendant's stated

reasons for firing her were pretextual: (1) this termination predated her poor performance review

and the Department of Health's criticisms of the operation of the NIC; (2) Plaintiff had a long

history of positive performance reviews; and (3) other NIC leaders removed from their positions

---

[11] This doctrine, also known as res judicata, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000).

as part of the Spring 2011 restructuring were transferred to other positions, not fired. (Pl. Opp'n at 43.)

Even assuming that Plaintiff's complaints that Yussuff was harassing her for taking FMLA leave sufficiently "made clear" that she was objecting to Defendant's alleged disability discrimination, Albunio, 947 N.E.2d at 138, Plaintiff has not shown the existence of a triable issue as to whether her initial termination was retaliatory. Defendant produced ample evidence that it initially terminated Plaintiff as part of a plan, developed to address Department of Health complaints about the operations of the NIC, which called for her position to be converted to a clinical role. (Def. Rule 56.1 Statement ¶¶ 80-83, 87-98;[12] R&R at 9 n.5.) That plausible rationale severs whatever causal link might otherwise be inferred from the fact that Plaintiff was demoted five months after she complained about allegedly discriminatory treatment. Plaintiff's various arguments that this rationale is pretextual are unavailing: neither the fact that Defendant also had other reasons to demote or terminate her in 2011, nor that Plaintiff had received positive performance reviews in other years, supports an inference that Defendant acted with retaliatory intent when it initially terminated her in 2010. While this termination may have been hasty (Def. Rule 56.1 Statement ¶¶ 97-98; Def. Rule 56.1 Reply ¶ 97-98), Plaintiff has not shown that retaliation played a motivating role in Defendant's decision. See Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 254 (2d Cir. 2014) ("Though five months might be enough to establish a prima facie case, temporal proximity alone is not enough to establish pretext in this Circuit.").

---

[12] Plaintiff's objections to the consideration of this evidence are also without merit. Yussuff's and Doherty's deposition testimony about what they were told by the Department of Health is not hearsay because it is not offered for the truth of the matter asserted (i.e., that the NIC was poorly run), but to show that the Department of Health was concerned about the operation of the NIC. Additionally, Plaintiff's response to Defendant's Rule 56.1 statement relies heavily on an impermissible "omnibus objection," see Local Rule 56.1(c), and conclusory denials unsupported by citations to admissible evidence, see Local Rule 56.1(d).

Because there is no genuine dispute of material fact as to whether Plaintiff's initial termination was motivated by retaliation, the court GRANTS Defendant's motion for summary judgment on Plaintiff's retaliation claim to the extent it is based on her initial termination.

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. 37) is GRANTED.  The Clerk of Court is respectfully DIRECTED to enter judgment for Defendants and to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      September 30, 2017

NICHOLAS G. GARAUFIS
United States District Judge